THE SNEAD & CO. IRON WORKS

*v.*

THE MERCHANTS LOAN AND TRUST COMPANY *et al.*

*Opinion filed February 21, 1907.*

1. BUILDING CONTRACTS—*effect where scale drawings are too small to show details.* Where photographs or specimens are relied upon to supplement scale drawings of the ornamental work on a building in order to show in detail what was covered by the contract, which is ambiguous in that respect, such specimens or photographs must be identified as part of the contract or illustrative thereof, and they cannot be so regarded unless the contractor has consented thereto.

2. SAME—*when letter written by contractor after signing contract is part of the contract.* Where a building contract and the drawings and specifications are ambiguous as to the details of the ornamental iron work, a letter written by the contractor after he had signed the contract but had refused to accept the specimens and photographs in the architect's office as being too elaborate, in which letter the contractor states the amount he had allowed in his bid for such work, which amount he offers to expend upon any design adopted, leaving the excess in cost as extra work, must be regarded as part of the contract which is subsequently signed by the owner and a copy sent to the contractor without any further reference to the matter.

3. SAME—*when the adoption of a particular construction would render contract void.* To adopt a construction of a provision of a building contract ambiguous as respects the scale drawings of the design for the ornamental iron work, which would leave the adoption of a design entirely to the discretion of the architect even though the cost of producing the work as designed might exceed the amount bid upon the entire iron work of the building, would be to render that provision of the contract blank instead of merely ambiguous, and would render the contract void for want of mutuality.

4. SAME—*when architect's award cannot be considered.* The award of an architect which is an entirety, and which is, in part, with reference to matters not submitted to him and in disregard of matters which were submitted to him, is of no binding force and cannot be considered in determining the rights of the parties to the contract.

CARTER, J., dissenting.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. TUTHILL, Judge, presiding.

This is a writ of error to review the judgment of the Appellate Court for the First District affirming the decree of the circuit court of Cook county dismissing for want of equity a bill for mechanic's lien filed against defendants in error's testator. The only question involved was whether anything, or how much, was due to complainant for work and building material under a contract. The bill attacks a finding, made by the architect named in the contract, which defendants in error regard as conclusive of the matters in controversy. The cause, upon the bill, answer and replication, was referred to a master, who reported against the complainant, and the trial court, overruling complainant's exceptions, entered a decree accordingly. The Appellate Court affirmed the decree, and the plaintiff in error sues out this writ.

In 1892 Marshall Field was having erected what may be termed the Wabash Avenue Annex to his retail store in Chicago, D. H. Burnham being employed as architect and superintendent. Bids were requested for the ornamental iron work, and the plaintiff in error submitted one for $88,643, which being the lowest bid, was accepted. The next lowest bid was $135,000. This ornamental iron work consisted of cast-iron frames for doors, entrances and show windows, cast-iron ceilings, stairway balustrades, elevator screen work, etc. William R. Snead, general manager for the plaintiff

in error company, signed the contract in duplicate, as well as a series of scale drawings which had been prepared by the architect, showing only in a general way the design and character of the iron work. It appears that there were in the architect's office, from the time the bids were called for to the time the contracts were signed, certain photographs of fine ornamental iron work made in Europe and a specimen of grille work executed by Winslow Bros. Company, iron workers of Chicago. It was controverted as to whether the grille work and photographs were presented to Mr. Snead before he signed the contract. He insists that he first saw them after he had signed the contract, when the photographs were presented to him for signature and he refused to sign them. Thereupon some further discussion arose as to the character and amount of work required under the contract. Later, on the same day, Mr. Snead caused to be delivered at Mr. Burnham's office the following letter, which was received and read by Mr. Perkins, an architect and Mr. Burnham's superintendent, that day or the next morning:

"*D. H. Burnham, Esqr., City:*    "CHICAGO, ILL., *Nov. 23/92.*

"DEAR SIR—Referring to our conversation of to-day regarding the character of the elevator screens and stairway balustrades for the Marshall Field building, we would say, that for the stairway balustrades we have allowed the total sum of forty-eight hundred dollars ($4800) and for the elevator screens the total sum of fifteen thousand dollars ($15,000), and we are ready to dispose of these two amounts in the design in such a manner as you think desirable. We had originally estimated for the elevator screens a total of 10,-873 sq. ft. Should you determine to have the screens in the north elevators in base., first, second, third and fourth stories of stores in spaces not over doors, it will make an addition of 1072 sq. ft., which we understand you will take care of by a change in the character of the elevator screen designs. We have estimated a total of balustrade of 960 lineal feet. We bring these amounts before you to bring about a clearer understanding between us of the value of the work we are to execute.

"We trust that your understanding is in accordance with this, and that we can proceed on this basis.

"Yours truly,

WILLIAM R. SNEAD, *Gen. Mgr.*"

The contract was dated November 22, 1892, but was not signed by complainant until November 23. Mr. Field was not present when complainant signed the contract, but the document was mailed to him on the 23d and signed by him at a later time. Mr. Field's personal attention, it seems, was not called to this letter until the work was done. After he signed the contract, one of the two copies was by Burnham sent to plaintiff in error at its main office in Louisville, Kentucky, and received by it November 28. Plaintiff in error proceeded to furnish the iron work, and there appears to be no question raised but that it was generally of the character and description contemplated by the architect, the controversy being not as to the quality of the work, but being in the main as to the refusal of the extra compensation claimed by the contractor and as to liquidated damages imposed for delay.

The material parts of the contract on the question of adjusting differences between the owner and contractor and compensation for extras is as follows: "That the contractor admits that the drawings and specifications are sufficient for their intended purpose, and covenants and agrees to follow same, and to furnish all materials of the quality and kind set forth in the specifications, and execute all work strictly in accordance with the drawings, using for data and dimensions the figures marked on each drawing in preference to what the drawing may scale, and to be governed in each case by the detail drawing in preference to what the general drawing may show for the same part of the work; to make the work shown and described thereby a perfect and finished job of its kind; to inform itself fully as to the construction and finish of said work, and to in no case proceed without first obtaining from the architect directions or drawings for the proper execution of the work. * * * And the contractor hereby expressly waives all claim or demand to any allowance for extra work or materials that may be furnished, unless in each case such extra work or materials shall have

been furnished upon a written order signed by the architect. * * * That in case the parties hereto cannot agree as to the true value of extra or deducted work or the amount of extra time, or in case they disagree as to the true meaning of any covenant or agreement herein, the decision of the architect shall in each case be final and binding. * * * Should any dispute arise respecting the true construction or meaning of the drawings or specifications the same shall be decided by the architect, and his decision shall be final and conclusive."

The contract provided that all work by which other contractors could be delayed should be completed April 1, 1893, and that on failure to so complete the work the contractor should be assessed as liquidated damages $150 per day thereafter. August 11, 1893, appellant presented the architect its final bill, under the contract, for $133,825.69, made up of the contract price, $88,643, and various extra items, amounting to $45,182.69. From the beginning of the contract until it was completed there had been many discussions as to its construction and meaning. Without question, from the evidence, the cost of the balustrades and the elevator screens, as made in compliance with the architect's requirements, was practically three times the aggregate of the sums, to-wit, $15,000 and $4800, mentioned in the letter of November 23, 1892, as the sums which were to cover those items. Various conferences were held between representatives of the plaintiff in error and Mr. Burnham, the architect, or someone in his office, and finally, after a hearing before Mr. Burnham, late in 1893, under the provisions of the contract for that purpose, he found that the work should have been completed by plaintiff in error on April 1, 1893, and was completed fifty-five days later. He allowed the contractor credit for twenty-nine days on account of strikes, Sundays, etc., and charged it for the main delay of twenty-six days at the rate of $150 a day, amounting to $3900; allowed the full contract price and about $2000 for extras, but disallowed the balance for extras, and on January 29, 1894, issued the fol-

lowing final certificate for the work, which embodies his findings:

"$16,835.07.

"D. H. Burnham, Architect, The Rookery.

"CHICAGO, *January 29, 1894.*

"*To Marshall Field:*

"Snead & Co. Iron Works, contractor for ornamental iron for your building, located N. W. cor. of Washington street and Wabash ave., is entitled to the sum of sixteen thousand, eight hundred and thirty-five and 07/100 dollars.

| | |
|---|---:|
| Original contract price | $88,643.00 |
| Contemplated work contracted for since, extras | 45,182.69 |
| | $133,825.69 |
| Deductions | 46,990.62 |
| Total claim being | $86,835.07 |

On account of above I issued—

| | |
|---|---:|
| Feb. 15, 1893, certificate No. 7 for | $7,500.00 |
| Mar. 17, 1893, certificate No. 11 for | 5,000.00 |
| Apr. 18, 1893, certificate No. 18 for | 20,000.00 |
| May 13, 1893, certificate No. 30 for | 12,500.00 |
| May 27, 1893, certificate No. 35 for | 15,000.00 |
| June 19, 1893, certificate No. 41 for | 5,000.00 |
| July 5, 1893, certificate No. 47 for | 5,000.00 |
| This present certificate No. 98 is for | 16,835.07 |
| Final | $86,835.07 |

D. H. BURNHAM."

It is to be observed that this award, on its face, is an entirety, and the deductions are charged in a gross sum. This certificate was presented to the manager of Marshall Field & Co., Field himself being out of the city, and the balance shown thereon paid and accepted by the plaintiff in error, its representative, Mr. Trowbridge, saying at that time to Field's representative, Mr. Selfridge, "You know we have other claims beyond the amount there called for," the reply being, "Yes; I know there is a matter still in abeyance."

The master took testimony bearing on the merits of the plaintiff in error's claims irrespective of the architect's award, and also testimony to enable him to determine whether that award was a final settlement of the controversy, and found

that the decision of Mr. Burnham was a bar to the relief
sought, and the circuit and Appellate Courts concur in this
finding.   Pending the litigation Marshall Field departed this
life, and the cause proceeds against his executors.

HARRY J. DUNBAUGH, for plaintiff in error.

HOLT, WHEELER & SIDLEY, for defendants in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the
court:

The transcript of the record in this cause contains 1881
pages.   The printed abstract filed by plaintiff in error con-
tains 529 pages.   Defendants in error complain of the ab-
stract as being incomplete and misleading, but as they have
not filed a further abstract, the one on file will be taken by
us "to be accurate and sufficient for a full understanding of
the questions presented for decision."   (Rule 14 of the Rules
of Practice of this court.)

The principal controversy is over a claim presented by
plaintiff in error for work which it deems to be extra work
performed upon the elevator screens and stairway balus-
trades in the annex to the Marshall Field building in Chi-
cago, which is used as a retail store.

The document originally signed by the plaintiff in error
provided that the work should be executed "according to
drawings and specifications prepared by D. H. Burnham,
* * *  signed by contractor hereto and made a part here-
of."   Those drawings are referred to as scale drawings, and
were used as a basis for the bid.   They were drawn upon
the scale of one-half inch to the foot and showed the outline
of designs for screens and balustrades for the first story only,
and showed that there were to be at certain indicated points
ornamental features, such as leaf work, but did not show the
character, quality or extent of such work, and the specifica-
tions did not help the drawings in this respect.

At and before the time of the signing of the contract as originally drafted, there were in the office of Burnham, the architect, photographs of elaborate ornamental iron work that had been executed in Europe, also a sample section of highly ornamental iron grille work.   Mr. Perkins, superintendent for Burnham, acted as the agent of Field in negotiating with plaintiff in error a contract after the bid had been accepted.   These negotiations extended over several days, and the contract as originally drafted covers nine pages in the printed abstract.   After plaintiff in error, by William R. Snead, its general manager, had signed it and had signed the drawings and specifications, Perkins presented to Snead certain of the photographs and asked that he sign the photographs as illustrative of the ornamental iron work that was to be done on the balustrades and elevator screens.   The general manager refused to do this.   It is contended that plaintiff in error, by its agents, had, prior to the time it made its bid, inspected the photographs and the grille with the understanding that they were of the same general character as the ornamental work which the successful bidder would be required to do on the screens and balustrades.   As to whether or not this statement is true the evidence is conflicting, but the contention of plaintiff in error in that respect finds substantial support in the fact that the work which the architect finally required it to do was much less expensive and less elaborate than that shown by the grille and photographs in question.   It is entirely manifest, moreover, that when the photographs were presented to Snead to be signed by him for the purpose of identification, as showing the character of the work required, he, Snead, said he did not bid on elaborate work like that, and that if the architect required work of that kind, he, Snead, would have nothing to do with it.   These photographs showed iron work ornamented with garlands of fruit and figures of cherubs.   When Snead first refused to sign, Perkins said the "fruit and babies" could be eliminated, but Snead protested that the work would

then be more elaborate than that which he had understood would be required.

With the negotiations in this state, Snead having, for his company, signed the contract as originally drafted and having signed the drawings and specifications and having refused to sign the photographs, left Burnham's office and went to luncheon with Perkins. After they left the office negotiations continued between them. Snead stated to Perkins the amount that he had figured in the bid to cover the balustrades and elevator screens, as he understood they were to be constructed in accordance with the scale drawings, and said, in substance, that if balustrades and elevator screens were to be required that could not be furnished at those figures he did not desire to enter into the contract. They separated without coming to any agreement, and on the same day Snead wrote to Perkins, and on that day or the next morning Perkins received, the letter which is set out in the foregoing statement.

Shortly after the original draft of the contract had been signed by Field, plaintiff in error entered upon the performance of the contract and furnished the balustrades and elevator screens in accordance with full-sized detail drawings thereafter furnished him by Burnham, protesting, from time to time, however, that the character of the work was more elaborate than the contract contemplated, and that it was not covered by the contract and for that reason should be regarded as extra work. The ornamental features consisted of leaves, buds, fruits, vines and various artistic figures which were not indicated by the scale drawings, and some of which necessitated hand work by skilled iron workers.

It is plain that the scale drawings were too indefinite to enable the contractor to determine what was required, and that the contract as originally drawn was in that respect ambiguous and uncertain. Had the photographs or specimen of grille work been made a part of the contract, by reference or otherwise, the ambiguity would have been re-

moved, or if the letter of November 23 is to be regarded as a part of the contract, then, for the purpose of this litigation, the ambiguity is likewise removed, because in that event the value of the stairway balustrades and the elevator screens as they were made and placed in the building by plaintiff in error, in so far as they exceed in value the amounts stated in that letter as being the value of that work as contemplated by the bid, is recoverable by plaintiff in error from defendants in error, on the theory that the amount of that excess is the value of extra work on the screens and balustrades.

Defendants in error first contend that the grille and photographs should be considered for the purpose of enabling the court to understand what the parties wrote in the contract, as they understood it at the time. This cannot be, as it is evident that plaintiff in error never consented that the photographs or grille were illustrative of the work that was to be furnished or had any connection therewith, and such consent was a necessary preliminary to their being so regarded.

Defendants in error also argue that it is almost impossible to make the scale drawings and specifications show the details of the work or even indicate fully its character and value, but that they always need to be, and are, supplemented, and that they may be supplemented by enlarged sketches on the margin of the scale drawings, or by reference to known and existing specimens of similar work, or by reference to photographs of such work. This reasoning is sound, but where specimens or photographs are relied upon to supplement the scale drawings they should be identified as a part of the contract or as illustrative thereof, so that there could be no question that they were used to supplement the scale drawings. In this case there was no such marginal sketch and no such specimen or photograph was so identified. In this condition of the record it is contended that the scale drawings may be supplemented by "the general standing of the architect and the usual character of his work,

the richness or simplicity of the building in general and the purposes for which it is designed." If the argument last mentioned is entitled to any consideration at all, it may be observed that in this case detail drawings were furnished after the contract was entered into, from which plaintiff in error was able to ascertain, without any difficulty whatever, precisely what the architect wanted. There is no legal reason why such detail drawings should not have accompanied the contract in the first instance and made it certain, without leaving the parties to determine their rights by so doubtful a measure as that afforded by the general standing of the architect and the usual character of his work, or by the richness or simplicity of the building in general and the purposes for which it was designed.

It is contended by the defendants in error that the scale drawings themselves are not definite and certain, and that under the contract the architect has the power to determine the true construction and meaning thereof; and further, that the architect did determine the meaning of the scale drawings and furnished the detail drawings in accordance with such determination, and that the ambiguity in the contract is thereby cured. In that view of the matter the contract was not only ambiguous, but it was blank and meant nothing so far as it was evidenced by the scale drawings. The difficulty about this contention is, that with the scale drawings in the condition they were when the original draft of the contract was signed by Snead, no one could tell what was required, and if that was to be ascertained some months later by the architect, and he had the power to require screens and balustrades that would be of the value of $20,-000, or that might exceed $50,000 in value, without any increase or decrease in the contract price for all the iron work, which was $88,643, there was no meeting of the minds of the parties and the contract was void for that reason.

When Burnham acted as arbitrator, he determined, as he testifies, that the photographs and grille were a part of

the contract and so considered them, and determined that the letter of November 23 was not a part of the contract and refused to consider it. Counsel for defendants in error say that the testimony of Burnham in this respect resulted from the fact that certain words were put into his mouth by cross-examining counsel. From Burnham's testimony, as set out in the abstract, we are of the opinion that he was not misled by the cross-examiner; that he understood the significance of the language used when he said, "I considered that the photographs and the scale drawings and the specifications, as well as the grille, * * * were part and parcel of Snead & Co.'s undertaking;" and, "I did not consider the letter to be a part of the contract." For reasons already pointed out, the architect, when acting in his capacity as arbitrator, was mistaken in concluding that the photographs and the grille work were any part of the contract.

At the time of the signing of the original draft of the contract it became evident that its ambiguous and uncertain provisions were differently interpreted by plaintiff in error and Field's agent, and, following a discussion between them, plaintiff in error wrote the letter of November 23, advising the agent, which was notice to Field, of the construction which plaintiff in error placed upon the contract as originally drafted. Field signed the original draft, and one copy of it was returned to plaintiff in error through the mail by the architect without anything further being said to the Snead company in reference to its letter or the meaning of the contract as originally drawn. Under these circumstances, in view of the ambiguity and uncertainty of the contract, plaintiff in error had the right to assume that its construction thereof had been assented to.

"The true principle of sound ethics is to give the contract the sense in which the person making the promise believed the other party to have accepted it, if he, in fact, did so understand and accept it." *Wells* v. *Carpenter,* 65 Ill. 447.

"Where the contract is, in fact, understood by one of the parties in a certain sense, and the other party knows that he so understands it, then the undertaking is to be taken in that sense; provided this can be done without making a new contract for the parties." *Street* v. *Chicago Wharfing Co.* 157 Ill. 605.

We conclude, therefore, that the letter of November 23 must be regarded as part of the contract in so far as it gives meaning to the original draft of the contract in reference to the value of the stairway balustrades and elevator screens that were to be furnished and put in place by the plaintiff in error.

It is argued that under provisions of the contract set out in the foregoing statement the architect's award is conclusive. It is manifest that the architect, in making his award, exceeded his jurisdiction by regarding that as a part of the contract which was not a part of the contract and in giving Field the benefit' thereof, and that he excluded from consideration, as not being a part of the contract, that which should have been regarded and treated as a part thereof. In other words, the rights of the parties which he attempted to adjudicate were not the rights which were submitted to him for arbitration. His finding was in reference, in part, to matters not submitted to him and disregarded other matters which were submitted to him. He departed from the authority conferred upon him by the contract, and his award being an entirety, is therefore not binding and is wholly ineffectual. *Tucker* v. *Page,* 69 Ill. 179; *Sherfy* v. *Graham,* 72 id. 158; *Alfred* v. *Kankakee and Southwestern Railroad Co.* 92 id. 609; *DeGroot* v. *United States,* 5 Wall. 419; *Skipworth* v. *Skipworth,* 9 Beav. 135; *Thrasher* v. *Haynes,* 2 N. H. 429; *Chase* v. *Strain,* 15 id. 535.

After the contract had been completed, and before the final certificate was issued, plaintiff in error, through Udolpho Snead, its president, and W. R. Snead, its general manager, sought to adjust the matter personally with Mr. Field, and

defendants in error, summarizing the result of the attempted negotiations with Mr. Field, state that Mr. Field said that "he knew nothing about it and that the whole matter was in the hands of Burnham." When the architect was considering the rights and claims of the parties, his superintendent, Perkins, acting for Field, made a claim against plaintiff in error for delay in the completion of the work. The contract provided that delay occasioned by certain matters should not be considered, and several days were deducted from the delay on account of those matters, and plaintiff in error contended that the remainder of the delay was occasioned by the failure of Burnham to furnish the detail drawings at the proper time. The evidence strongly tends to show that this was the case. It became, then, a question whether Burnham or plaintiff in error was responsible for the delay. If Burnham was so responsible the delay was the delay of Field, and plaintiff in error would not be liable for damages by reason thereof. Burnham proceeded to determine this question with Perkins, his superintendent, seeking to show that the fault was not Burnham's. Perkins was successful. The decision was adverse to the Snead company.

Plaintiff in error unsuccessfully sought a decree for several smaller amounts, which are referred to in the litigation as "minor disallowances." We have examined the evidence pertaining to these. At least one of them was not a proper charge against Mr. Field in any event. As to some of them plaintiff in error did not properly preserve its right with reference to the adverse action of the master, and the others are without merit.

The judgment of the Appellate Court and the decree of the circuit court will be reversed and the cause will be remanded, with directions to the circuit court to sustain the exceptions to the master's report which, when filed originally as objections, were numbered, respectively, 3, 24, 26, 27, 28, 29, 35, 37, 38, 41 and 42, being the exceptions questioning the finding of the master in reference to the elevator screens

and stairway balustrades, in reference to the delay and in reference to the conclusive character of the architect's findings. The circuit court is further directed to disregard entirely the award of the architect in reference to the elevator screens and the stairway balustrades and the damages occasioned by delay, and to ascertain the value of the stairway balustrades as placed in the building by plaintiff in error, and if that value exceeds the sum of $4800, to award, by final decree, the excess to plaintiff in error as a sum due and unpaid, and to ascertain the value of the elevator screens as placed in the building by plaintiff in error, and if that value exceeds the sum of $15,000, to award, by said final decree, the excess to plaintiff in error as a further sum due and unpaid, and to ascertain whether any sum is chargeable against plaintiff in error, under the contract, for delay, and if not, to award to plaintiff in error, by said final decree, the further sum of $3900 as money due and unpaid, but if it be found that some amount is chargeable for damages on account of delay, to ascertain the amount, and if that amount is less than $3900, to award to the plaintiff in error, by said final decree, the amount of such deficiency as a further sum due and unpaid, but if the court should determine that the amount of damages occasioned by delay exceeds the sum of $3900, then such excess may be deducted from any allowances made by the court on account of the stairway balustrades and the elevator screens. Proof already taken, so far as material, shall be considered by the court, and by the master if there be a re-reference, and such proof shall not be re-taken, but the circuit court may, if justice requires, permit the taking of further evidence, by either party, material to the questions to be determined by the circuit court in following the directions by this opinion given.

*Reversed and remanded, with directions.*

Mr. Justice Carter, dissenting.