CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

HORACE W. FOX *vs.* THE HARTFORD & WEST HARTFORD HORSE RAILROAD COMPANY.

First Judicial District, Hartford, October Term, 1897. ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

Certain coupon bonds issued by the defendant company and owned by *H*, its president, while held by the plaintiff as collateral security for a debt due him from *H*, were conveyed by the latter to the plaintiff, by a written instrument, and thereby became the plaintiff's absolute property. In consideration of this conveyance the plaintiff, in the same instrument, agreed to sell and deliver the bonds to *H* upon payment of a specified amount within a limited time. Nothing was said by either party as to the coupons. In an action against the obligor, after the time allowed for *H* to repurchase the bonds had expired, to recover the amount of the unpaid coupons, it was *held* :—

1. That upon these facts the trial court was fully justified in holding that the title to the coupons passed to the plaintiff with the bonds.
2. That evidence of the price the plaintiff had obtained for certain shares of stock which also became his absolute property by virtue of the aforesaid conveyance, was irrelevant, and properly excluded; as was also evidence of the secret intent of *H* not to transfer the coupons with the bonds.
3. That a previous "arrangement" or understanding between the defendant and *H*, that he was not to present the coupons for payment until it was convenient for the company to pay them, was unavailing as a defense against coupons overdue at the date of their transfer to the plaintiff, inasmuch as it did not appear that such arrangement constituted a valid contract obligatory upon *H*, in whose shoes the plaintiff stood.

VOL. LXX—1 (1)

4. That interest upon the coupons from the time of their presentation for payment was properly allowed.

The case of *Rose* v. *Bridgeport*, 17 Conn. 243, limited and distinguished.

[Submitted on briefs October 5th—decided November 30th, 1897.]

ACTION to recover the amount of eighteen coupons attached to bonds of the defendant, brought to the Court of Common Pleas in Hartford County and tried to the court, *Peck, Associate Judge;* facts found and judgment rendered for the plaintiff, and appeal by the defendant for alleged errors in the rulings of the court.  *No error.*

The coupons in suit were attached to six bonds, three coupons to each bond; one of the three coupons upon each bond maturing February 1st, 1895, one August 1st, 1895, and one on February 1st, 1896; and the form of each coupon was as follows:—

*Coupon.*

The Hartford & West Hartford Horse Railroad Company will pay the bearer twenty-five dollars ($25) at the City Bank in the city of Hartford, Connecticut, on the first day of          , for semi-annual interest on Bond No.     , dated August, 1894.

25 Dollars.                            W. E. Goodwin, *Treas.*

Prior to January 4th, 1896, the bonds and coupons in question were the property of David Henney, who, being indebted to the plaintiff on two stock notes of the face value of $4,500, to secure said notes had given the plaintiff the bonds in question with the coupons attached thereto, and also the stock mentioned in the contract hereinafter set forth; and on the 4th of January, 1896, these securities were in the plaintiff's possession.  Said stocks and bonds were of the par value of $14,500, but were of uncertain market value and not readily salable.

On the 4th day of January, 1896, Henney and the plaintiff signed the following contract (Exhibit A): "Whereas David Henney has this day conveyed to me for a valuable consideration by him received, certain stocks and bonds, namely, (340) three hundred and forty shares of Hartford Light and

Power Co., capital stock, represented by certificate No. 229, and (6) of the first mortgage bonds of The Hartford & West Hartford Horse R. R. Co. for ($1,000) one thousand dollars each, the same being my absolute property: Now, therefore, I hereby agree to sell and deliver to the said David Henney the aforesaid shares of stock and the bonds aforesaid, upon the payment to me in hand of the sum of ($5,000) five thousand dollars on or before January 10th, 1896. David Henney, H. W. Fox.  Hartford, Conn., January 4, 1896."

Upon the signing of this contract the plaintiff delivered up to Henney the notes in his possession, and retained possession of the bonds with the coupons thereto attached. Nothing was said between the contracting parties as to whether or not the coupons passed with the bonds. The plaintiff or his book-keeper, on or before the date of said contract, figured in pencil on said stock notes the accrued interest to January 1st, 1896, which made the entire indebtedness $4,875.80. This was done in the expectation that said notes would be paid about January 1st, 1896, and to determine the amount due. As they were not paid, the arrangement expressed by the contract aforesaid, was made. Henney has never paid said notes, except by the transfer of said securities, nor the $5,000 mentioned in the contract. He never asked the plaintiff for the coupons, but about February 1st, 1896, he notified the bank not to pay them, and notified the plaintiff that he had done so. Henney was president of the defendant company, and had had an arrangement with the company not to present the coupons for payment until it was convenient for it to pay them. The plaintiff had no knowledge of such arrangement. It was not questioned that the plaintiff was the owner of the bonds by virtue of the contract aforesaid and the transaction connected therewith; and it was admitted that he had such title to the coupons, if any, as was given by said contract and said transaction. The plaintiff duly presented the coupons for payment, and they had not been paid.

Upon these facts the defendant claimed that the coupons in question did not pass to the plaintiff with the bonds, but

remained the property of Henney. The court did not so hold, but held that the coupons passed to the plaintiff with the bonds.

The defendant also claimed that as two of the coupons on each bond were overdue at the time of said transaction, the plaintiff took them subject to the arrangement between Henney and the defendant company, but the court did not so hold.

On the trial the defendant asked the plaintiff on cross-examination the following question: " Have you sold, since taking this document, the Light and Power stock, whose par value is $25, at $20 a share? " This evidence was offered for the purpose of showing that the debt to Fox, represented by the notes, was fully paid, and more than paid, by the sale of Light and Power stock; and for the purpose of proving that the coupons were not the property of the plaintiff, in connection with evidence thereafter to be offered to show that, notwithstanding Exhibit A, he still held at the time of said sale both stock and bonds simply as collateral for the notes. The court excluded the question, and the defendant took an exception. No such testimony as was proposed to be offered in connection with the above question was afterward introduced or offered by the defendant.

The plaintiff afterward having testified that he had traded said stock with one Olmstead, the defendant asked him: " At what price did the stock go into the trade with Olmstead? " The court excluded the question, and the defendant took an exception.

The defendant offered said Henney as a witness, and during his examination asked him: " Was it your intention to convey the coupons? " The court excluded the question, and the defendant took an exception.

The trial court found that said coupons were conveyed to the plaintiff as incident to the bonds, in payment of said stock notes. The court also held that the possessory title of the plaintiff was sufficient to entitle him to recover in this action, and rendered judgment in his favor for the amount of the coupons, with interest from the first day of February,

1896, when they were presented for payment. No claims were made by either party during the trial as to whether interest should or should not be allowed.

*William F. Henney*, for the appellant (defendant).

Since the question of ownership was raised by the pleadings, proof of that fact is essential to recovery. Proof of possession, under the circumstances of this case, is not enough. *Pendleton County* v. *Aimee*, 13 Wall. 297. Inasmuch as the coupons in question, with the possible exception of the coupon maturing February 1, 1896, were overdue at the time of the transaction set forth in Exhibit A, the plaintiff took them subject to all the equities in favor of the defendant company. Jones on R. R. Securities, § 324; *Arrants* v. *Commonwealth*, 18 Gratt. 750; *Gilbo* v. *Norfolk & Petersburg R. Co.*, 1 Hughes, 410; Jones on Pledges, § 675, and authorities there cited. The coupons in question are not the property of the plaintiff, and the company, having been notified not to make payment to him, cannot properly do so. As the plaintiff bases his title to the coupons solely upon title to the bonds, it is clear from the premises that he has no title to the coupons whatever. The ownership of bonds is never proof of title to coupons belonging thereto. All our courts have uniformly regarded them, when made payable to bearer, simply as negotiable instruments. They may be sued upon without producing the bonds, and the owner may bring his action without having any interest in the bond itself. *Thomson* v. *Lee County*, 3 Wall. 332; *Aurora City* v. *West*, 7 id. 105. It was error to allow interest on the coupons. *Rose* v. *Bridgeport*, 17 Conn. 243. No interest was claimed by plaintiff in evidence or upon argument; hence defendant had no occasion to make any adverse claim.

*Sidney E. Clarke*, for the appellee (plaintiff).

Upon the facts admitted or proven, the court rightfully found that the coupons passed to the plaintiff with the bonds. Such an arrangement as was testified to by the president of the defendant, would not dishonor the bonds or coupons in

plaintiff's hands, without notice.   There was no error in holding that the plaintiff took them free from the arrangement between the company and its president.   *Roe* v. *Jerome*, 18 Conn. 138; *Starr* v. *Anderson*, 19 id. 341; *New York & N. E. R. Co.* v. *New York & N. H. R. Co.*, 52 id. 282; *Credit Co.* v. *Howe Machine Co.*, 54 id. 389; *Chase's Appeal*, 57 id. 263.   The testimony offered to contradict the terms of Exhibit A was rightly excluded by the court.   *Caulfield* v. *Hermann*, 64 Conn. 325.   For the same reasons the testimony as to Henney's intention was properly excluded.   An intended contract not made cannot be set up in place of one made. *Sanford* v. *Howard*, 29 Ala. 684.   It is error to admit oral testimony of the intentions with which a writing is executed. *Watson* v. *Watson*, 24 S. Car. 229; *Morris* v. *Robinson*, 80 Ala. 291.   The language of a written contract, while it is in force, is the only legitimate evidence of what the parties intended and understood by it.   *West Haven Water Co.* v. *Redfield*, 58 Conn. 39.   Interest was properly allowed.   *Selleck* v. *French*, 1 Conn. 33; *Jones* v. *Mallory*, 22 id. 392; *Hubbard* v. *Callahan*, 42 id. 529.   In *Rose* v. *Bridgeport*, 17 Conn. 247, suit was brought to recover on three coupons, with interest by way of damages.   The coupons, however, were not of the character of those in question.   The inference from the opinion is, that if the coupon had been an independent collateral promise to pay a sum certain on a certain date, the court would have found that the holder was entitled to damages for non-payment of the coupon.   2 Danl. on Neg. Inst. (3d ed.) §§ 1513, 1514, and cases cited; *Aurora* v. *West*, 7 Wall. 82; *Spencer* v. *Higgins*, 22 Conn. 529; *Crosby* v. *New London, W. & P. R. Co.*, 26 id. 125, 126; *Peoples' Savings Bank* v. *Norwalk*, 56 id. 547–554.

TORRANCE, J.   In his reasons of appeal the defendant claims, in substance, that the trial court erred: (1) in holding that the title to the coupons passed to the plaintiff with the bonds; (2) in excluding certain testimony; (3) in holding that the plaintiff did not take the overdue coupons

subject to the "arrangement" between Henney and the defendant; (4) in allowing any interest upon the coupons.

These claims will be considered in the order stated. We are of opinion that there was no error in holding, upon the facts found, that the plaintiff, as the undisputed owner of the bonds, also owned the coupons. The bonds with the coupons attached to them were voluntarily delivered to the plaintiff by the defendant, at some time prior to the making of the contract, by way of pledge for a debt. The plaintiff, from the time this pledge was made to the time the contract was made, with the full knowledge and assent of the defendant, held both the bonds and the coupons as security for his debt. The bonds were of uncertain market value and not readily salable. Just before the making of the contract, then, Henney owned the bonds and the coupons, and both were in the possession of the plaintiff by way of pledge. It was under these circumstances that the transaction of January 4th, 1896, took place. By that transaction it is conceded that the plaintiff became the absolute owner of the bonds which were then in his hands, subject only to Henney's right to repurchase as provided for in the contract; and by it, also, Henney's debt to the plaintiff was paid, and the stock notes were surrendered to Henney. At the time Henney thus transfers the title to the bonds to the plaintiff, he does not ask to have the coupons surrendered to him, nor does he in any way intimate that they are not to pass with the bonds, and the plaintiff, with Henney's full consent, retains possession of them. Upon these facts the inference is well nigh irresistible that the parties intended that the coupons should pass with the bonds.

About the only fact claimed to be adverse to this conclusion, is the fact that nothing was said one way or the other about the coupons; but this fact is only one of evidential value, and as such is of comparatively slight importance; certainly by itself it is by no means conclusive. Suppose the bonds with the coupons attached had been in Henney's hands when the contract was made, and pursuant to its provisions he had passed the bonds with the coupons attached over to

the plaintiff; could there be any reasonable doubt that he intended to transfer the coupons as well as the bonds, even if nothing had been said about the coupons? We think not.

Upon the facts found, and with reference to the point now under consideration, the present case does not essentially differ from the case supposed. The trial court was fully justified in holding that the coupons passed to the plaintiff with the bonds.

The court excluded evidence of the amount realized by the plaintiff from the disposition of the Light and Power Company stock, and of this the defendant complains. Upon the conceded facts in the case, it is difficult to see how the defendant had any interest in this matter. Henney might have had such an interest, but he was not a party. That evidence was admissible only on the theory that the stock when disposed of, was held merely as collateral for Henney's debt, and that this point was in issue in the case. But the uncontradicted evidence in the · case showed that the stock was the plaintiff's absolute property, and no evidence was offered to show that it was not; and furthermore the point was not in issue. The evidence, for all the purposes for which it was offered, was irrelevant and was rightly excluded.

Henney as a witness was asked, " Was it your intention to convey the coupons?" The question really called for evidence of the actual, secret, unmanifested intention of Henney, which, under the circumstances, was of no legal significance.

The real question was as to his manifested intention, and this could be ascertained only from the contract read in the light of the circumstances under which it was made. The evidence was properly excluded. *Hotchkiss* v. *Higgins*, 52 Conn. 205.

The next question is whether the court erred in holding that the plaintiff did not take the two overdue coupons subject to the arrangement between Henney and the defendant company: It must be conceded that these two coupons are negotiable instruments, and that the plaintiff took them when they were overdue. The fact that these two coupons were overdue would not necessarily affect the plaintiff's title

to the bonds, nor to the coupons not overdue.  2 Daniel on
Neg. Inst. (3d ed.) § 1506 *a ;*  Tiedeman on Com. Paper,
§ 473 ; nor is it claimed that it would do so ; the only claim
made is that it affected the title of these two coupons.  It
may be conceded also, as claimed by the defendant, that in
taking these two overdue coupons the plaintiff took them
subject to all defenses and equities which would have been
available to the defendant against Henney.  2 Daniel on
Neg. Inst. § 1505 ; Tiedeman on Com. Paper, § 473.  The
defenses and equities which would have been thus available,
are confined to those which existed and attached to the cou-
pons themselves in the hands of Henney at the time of the
transfer, and do not include defenses and equities arising out
of collateral transactions.  *Simpson* v. *Hall,* 47 Conn. 417.
In other words the plaintiff took such title to the overdue
coupons as Henney had to convey.  " The indorsee of over-
due paper takes it as a holder with notice that it is subject
to some defense, for he takes it at a time when in due course
it should have been paid.  He therefore takes it subject to
the defense :  (1) That it was affected in its inception with
some inherent vice, as, for instance, fraud, illegality, or
duress ; or (2) that the consideration failed, or that pay-
ment had been made, or that there had been accord and sat-
isfaction, at the time of the indorsement, or that there was
some equitable defense arising out of the transaction, in
which the paper was given, which disabled his indorser in
whole or in part.  Any of these defenses is called an equity
attaching to the instrument."  1 Daniel, Neg. Inst. § 725 *a ;*
Tiedeman, Com. Paper, § 295.

The arrangement which is found to have existed between
Henney and the defendant is that Henney " was not to pre-
sent the coupons for payment until it was convenient for it
to pay them."  The utmost that can be claimed for this is
that it was in effect an agreement not to bring suit upon the
coupons until it was convenient for the company to pay
them ; and it admits of grave doubt whether a collateral
agreement of this kind, which so directly contradicts the
language of the coupon, is not a defense or an equity aris-

ing out of a collateral transaction, by which the plaintiff would not be affected.

It is not, however, necessary to determine that question here, for we think that upon the facts found it is not shown that the company could have availed itself of this arrangement even as against Henney; and if so the plaintiff cannot be affected by it. It is found that Henney, who was president of the defendant company, " had had an arrangement " of the kind indicated, but it is not found that it was in existence when the coupons were transferred to the plaintiff. For aught that appears it may have ceased to exist long before that time. Then again it is not shown that there was any consideration for the forbearance on Henney's part, or that he was in any way legally or equitably bound to forbear, or to continue his forbearance for any length of time. It is not even shown that there was any contract or agreement at all, with or without consideration, on Henney's part, not to present the coupons for payment. For aught that appears it was merely an understanding or " arrangement " to last during the pleasure of Mr. Henney, and not at all obligatory upon him legally or equitably. Under such circumstances Henney could have brought suit on the coupons, and the " arrangement " would be no defense as against him; and we think it is equally unavailing as against the plaintiff standing in Henney's shoes.

The court allowed interest upon the coupons from the time they were presented for payment, and of this also the defendant complains. It is settled by the current of American authorities that coupon bonds, and coupons, like those in the present case, are negotiable instruments, and that the coupons may be detached and negotiated separately by simple delivery. *Society for Savings* v. *New London*, 29 Conn. 174; *New London City Bank* v. *Ware River R. Co.*, 41 id. 542; 2 Daniel, Neg. Inst. § 1509 *et seq.*; Tiedeman, Com. Paper, §§ 473–478. The coupon may be outstanding and suit brought upon it even after the bond has been paid and satisfied. *National Exchange Bank* v. *Hartford, etc., R. Co.*, 8 R. I. 375. As the coupon may be thus detached from the bond, and by negotiation

may thus become an independent claim, existing as well before as after the bond is paid, the general rule founded in good sense, and supported by the very great preponderance of authority, is that interest, at least after demand of payment, is allowable upon overdue coupons.  Tiedeman, Com. Paper, § 477 and cases cited; 2 Daniel, Neg. Inst. § 1513 and cases cited.  "Interest is recoverable upon coupons after their maturity; for being promissory notes, generally speaking, it is just that if not paid when due they should continue to draw interest by way of compensation for the damages incurred from the detention of the money.  Interest upon overdue coupons is therefore recoverable and should be computed at the lawful rate without semi-annual or other rests." Freeman's Note to *Morris Canal Co.* v. *Fisher*, 64 Am. Dec. 439, citing a great number of cases; *Whitaker* v. *Hartford, etc., R. Co.*, 8 R. I. 47; *National Exchange Bank* v. *Hartford, etc., R. Co.*, ibid. 375; *Beaver County* v. *Armstrong*, 44 Pa. St. 63; *Trustees, etc.,* v. *Lewis*, 34 Fla. 424, 43 Am. St. Rep. 209.  We see no good reason why this almost universal rule as to the allowance of interest upon overdue coupons, especially after demand of payment, should not apply in a case like the one at bar.

The defendant, upon this point, relies upon *Rose* v. *Bridgeport*, 17 Conn. 243.  That case was decided at a time (1845) when coupons and coupon bonds, so common to-day in the markets of the world, were just beginning to come into use, and the coupons in that case were quite different from the coupons in the present case.  In that case the coupon itself contained no promise to pay the interest mentioned in it.  It simply acknowledged that, on a named date, there would be due to the bearer half a year's interest on a certain bond, and that this would be payable on that date.  The coupons were signed by an agent of the city—an agent to acknowledge but not to pay.  In the case at bar the coupons declare expressly that the company will pay the bearer the interest at a certain bank on a certain day, and they are signed by the treasurer of the company.  The decision in *Rose* v. *Bridgeport*, proceeds, in part at least, upon the view taken by the court

concerning the nature of the coupons in that case. The coupons were not regarded as conferring any right of action at all upon the holder; they were mere certificates that a half year's interest would be due on the bond at the date specified; and although payable to bearer, they were held to operate "only as an order or letter from the obligee, requesting the interest upon the bond to be paid to another." The only obligation to pay interest was held to arise from the bond alone, and not from the coupons, and the action was regarded as an action upon the bond. Viewing the coupons in this light, the court regarded the action as one brought upon the bond to recover interest, as such, upon interest, that is compound interest, as such, and held that as the case then before it did not fall within any of the classes of cases in which compound interest was recoverable, the plaintiff was not entitled to compound interest.

The principles applied in that case have little or no application to a case like the present. The coupons in this case are regarded by the law as negotiable instruments, and for most purposes as being entirely independent of the bond, and as conferring a right upon the holder, whoever he may be, to the sum of money mentioned in the coupon at the very day therein specified. Cases like this seem to fall, and to have been intended by the parties to fall, within the principle of the third rule laid down by JUDGE SWIFT in *Selleck* v. *French*, 1 Conn. 32, 33, rather than within the rules applied in *Rose* v. *Bridgeport*. The rule laid down by JUDGE SWIFT is this: "3. Where there is a written contract to pay money or other thing on a day certain, and the contract is broken, then interest is allowed by way of damage for the breach, as in the case of notes and bills of exchange." We are not disposed to extend the doctrine applied in *Rose* v. *Bridgeport* to cases like the present. We are of opinion that the interest on the overdue coupons was properly allowed.

There is no error.

In this opinion the other judges concurred.