[S. F. No. 5786.   Department Two.—June 29, 1912.]

T. J. FLEMING, Trustee, Respondent, v. HERBERT E. LAW, Appellant.

CONTRACT—CONSTRUCTION OF WRITINGS QUESTION OF LAW—CONTRACT PRICE OF MARBLE SET IN BUILDING—ASSIGNMENT—ASSIGNEE BOUND BY TERMS OF CONTRACT.—In an action by an assignee of a contractor to recover a balance alleged to be due on a contract for furnishing marble to a building erected by the defendant, it is held, upon a review of the writings evidencing the original contract and a subsequent modification of it by the parties thereto, that the contract price was to be determined by the amount of the marble set and measured in the building, and not by the amount actually

furnished by the contractor, and that the trial court should have instructed the jury to that effect as matter of law. It is further held, that the defendant did not assent to the assignment of the contract to the extent that the assignee became substituted for the contractor therein, and that the assignee was bound by the modification of the contract respecting the method of ascertaining the contract price.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Edgar C. Chapman, for Appellant.

Milton T. U'Ren, and Thomas, Beedy & Lanagan, for Respondent.

HENSHAW, J.—This action was brought to enforce the payment of a sum of money alleged to be due on a contract for furnishing marble to the Monadnock building in San Francisco owned by the defendant. The cause was tried before a jury and plaintiff received a verdict in the sum of $6,170.61, the full amount sued for, with interest. Judgment was rendered in accordance with the verdict. Defendant appeals from that judgment and from the order denying his motion for a new trial.

So little dispute is there over the facts that it may be said that they are presented without conflict. The controversy arises over the legal conclusions to be drawn from the admitted facts. The latter are the following: In 1904 defendant Law contemplated the construction of an office building in San Francisco known as the Monadnock building. W. A. Perrin, a marble man, entered into a contract with Law to furnish the marble proposed to be used in the construction of this building. The contract was in writing. It set forth the various prices for the marbles and the condition in which they were to be shipped f. o. b. cars, Colton, California. This contract was known as the "square foot" agreement and concluded as follows: "If my quotations are accepted, it is understood that this per square foot agreement will be substituted for a lump sum contract, this contract to be drawn

and entered into as soon as sufficient drawings have been completed to enable us to do so.'' It is unquestioned that the true meaning of this is that the lump sum contract was to be substituted for the temporary square foot agreement. The drawings and specifications were not at that time sufficiently complete to enable the parties to know just how much marble and of what character would be required in the building.  .

In the square foot agreement the provision for payment is the following: ''On arrival and checking of marble in San Francisco in carload lots 90% of the amount due will be paid on presentation of architect's certificate. The balance of 10% will be due twenty-five days after the marble is set in the building complete.'' Perrin entered upon the delivery of the marble. Because of his immediate need for money to pay his labor and because of the delay in procuring the architect's certificates Perrin testifies, and it is without dispute, that the mode of payment was modified. The presentation of the architect's certificate was waived and Law permitted Perrin to draw upon him for ninety per cent of the contract price of the marble as soon as it was placed on the cars at Colton. Meanwhile the drawings, plans and specifications had been completed and Law from time to time requested Perrin to enter into the ''lump sum'' agreement which was to take the place of the ''square foot'' agreement with the result that on February 23, 1906, Perrin executed the following writing:

''San Francisco, California.
''MR. HERBERT E. LAW,
       ''Rialto Building, City.
''Dear Sir:—
   ''It is agreed that payments for marble on contract dated September 6, 1904, for marble in Monadnock Building are approximate only and that the actual marble to be paid for by you will be measured set in building; the owner taking no responsibility as to size or condition, etc., delivered.
                      ''Yours very truly,
                          ''(Signed) W. A. PERRIN.
''Dated this 23rd day of February, 1906.''

Perrin had fallen into financial difficulties and was unable to pay his laborers. On or about the date of the letter above quoted he entered into an agreement with T. J. Fleming, plaintiff herein, which declared that he assigned and trans-

ferred his contract with Law to Fleming as trustee in trust for the purpose of carrying out and fulfilling its provisions. The "trust" thus declared was to fulfill the contract by the performance of its terms and to pay to Perrin's creditors, a list of whom was given, the moneys due to them. Upon the completion of the contract any excess of the moneys over and above the amount due the creditors was to be paid to Perrin. It was fully understood and agreed "that said T. J. Fleming assumes no personal liability under said contract, and the only responsibility assumed by him is the fulfillment of the trust referred to in this assignment." Fleming was to have full management and control of Perrin's marble plant.

Following these writings and upon March 6, 1906, Fleming presented the following letter to the defendant:

"March 6, 1906.

"HERBERT E. LAW,

"San Francisco, California.

"Dear Sir:

"I beg to hand you herewith two copies of the assignment of the contract Mr. W. A. Perrin has with you for furnishing the marble to be used in the Bishop Building (Monadnock) in San Francisco. I understand that Perrin has been in San Francisco and advised you of this assignment, and that it is agreeable to you. If this is correct I would be pleased if you would designate your acceptance on one of the copies and return it to me at your earliest convenience. I understand there will be a carload of marble ready to be shipped in a few days. Thanking you for your prompt attention to this matter, I am

"Very truly yours,

"(Signed)    T. J. FLEMING, Trustee."

To this letter he received this response:

"San Francisco, Cal., March 8, 1906.

"MR. T. J. FLEMING,

"California Portland Cement Co.,

"401–3 Trust Building, Calif.

"Dear Mr. Fleming:

"I have your favor of the 6th inst. It will be quite apparent to you that I cannot consider the transfer of my contract to a number of persons of whom I know nothing, and

of whose responsibility and ability to carry out the contract
I do not know. Mr. Perrin, I think, is a responsible man and
that he will carry it out. These gentlemen are perhaps re-
sponsible, I do not know anything about them.

"It seems to me, Mr. Fleming, that a transfer on my part
is not necessary anyhow. Mr. Perrin will give you an order
on me for the money that falls due from time to time, and
I will pay it to you. That is all there will be to it. Just as
soon as you have served me with notice of assignment, I will
acknowledge receipt and whatever money becomes due to Mr.
Perrin, I will pay on his order. It seems that this would ac-
complish your desire without requiring any other assignment
than the arrangement that may be made between the men,
Mr. Perrin and yourself.

"Very truly yours,
"(Signed)   HERBERT E. LAW."

It appears that the suggestion in Mr. Law's letter outlined
the course which was actually pursued for Perrin did give
a written order to Mr. Law to "pay to T. J. Fleming, trustee,
all moneys now due or that may become due me on that cer-
tain contract for furnishing marble," etc.

Much marble had been delivered under this contract at the
time of the earthquake and fire of April, 1906. The Monad-
nock building was injured in this calamity. In May, 1906,
inspection was had and measurements were made of the mar-
ble saved from the disaster. A detailed list of the kinds and
quantity of marble thus saved was prepared by Perrin and
his son who had the contract for setting the marble in the
building. It was found that in value $7,404.35 had been
saved. Work was taken up for the completion of the build-
ing and more marble was shipped and placed therein. It
is shown that up to within a few days before the April disas-
ter there had been shipped for use in the Monadnock building
marble of the contract value of $32,558.29. Upon this Law
had paid $29,819.51, leaving a balance unpaid of $2,738.78.
After the disaster marble of the value of $34,747.23 was
shipped. Upon this Law had paid $31,315.40, leaving the
value of the marble unpaid $3,431.83. These two items of
$2,738.78 and $3,431.83 represent the sums sued for by plain-
tiff for which he obtained judgment.

Appellant, however, contends and it is without dispute that the contract price for all the marble actually set in the building and measured therein upon its completion amounted to the sum of $33,908.45; that it is equally without dispute that $7,404.35 of this amount was marble saved from the disaster; that deducting this latter sum from the former there is left $26,504.10 as the contract price of the marble shipped after the disaster and actually set in the building. Appellant shows further that there was an excess of marble shipped over that used in the building amounting to $8,243.13. It is by all parties conceded that Law was not in the business of buying marble and that under his contract he needed and was required to take only the marble called for by the specifications for the Monadnock building, and so far as the evidence on behalf of the plaintiff is concerned it is all to the effect that it was intended to cut and ship no more marble than was called for by the plans and specifications. Nevertheless, there was shipped this excess in value of $8,243.13. The explanation probably is that after the disaster the plaintiff did not make an allowance for the $7,404.35 of marble saved therefrom, but duplicated the original quantity called for by the contract.

Appellant still further argues and shows that immediately after the disaster there was a balance unpaid upon the marble shipped of $2,738.78; that there was marble saved to the value of $7,404.35. Deducting from this the sum of $2,738.78, which was owing, $4,665.57 had been paid upon the marble saved from the disaster and placed in the building. Upon the shipment of marble made after the disaster there has admittedly been paid $31,315.40, making a total payment for the marble actually set in the building of $35,980.97. But (so runs appellant's argument), the value of all marble set in the building, measured by its contract price, was only $33,908.45; from which results the inevitable conclusion that appellant, instead of being indebted to plaintiff, has made payments in excess of the full contract price and for the excess marble wherever it is or whatever it may be, appellant disclaims all liability and responsibility.

Respondent, in effect, concedes this to be true if his rights are to be measured by the contract between Perrin and Law embodied in the written communications above set forth, and

in particular, if his rights are to be affected by Perrin's letter of February 23, 1906, where the declaration is made over Perrin's signature that Law is to pay only for the actual marble set in the building and there measured. To avoid the effect of this respondent contends that Law assented to and accepted the assignment made by Perrin to Fleming; that at the time this assignment was so made and assented to he, Fleming, did not know of the modification of the contract contained in the letter of the 23d of February, and that, therefore, he is not bound by it; and that the legal conclusions which necessarily follow from this are that Law agreed to pay the full contract price for the marble shipped, ninety per cent of that contract price when the marble was f. o. b. cars at Colton, and ten per cent upon delivery, and that any excess marble belongs to Law and should be paid for by him.

Thus, it will be seen that the legal controversy between these parties revolves around two propositions: 1. Did Law assent to Perrin's assignment of his contract to Fleming to the extent that Fleming became substituted for Perrin therein; and, 2. Was this assent to the assignment, if given, given under such circumstances as to relieve Fleming from the operation of the modification contained in Perrin's letter to Law of February 23d. Without hesitation both of these questions must be answered in the negative. As to the first, Law's response to Fleming's letter is a distinct refusal to recognize the assignment and to relieve Perrin from his responsibility thereunder. He was willing to go no further, and did go no further, than to declare that he would recognize in favor of Fleming such orders for the payment of moneys due to Perrin arising under the contract as Perrin might give. Such an order was actually given and was honored by Law. Upon the second proposition it is, of course, beyond argument that if Fleming had not been substituted for Perrin as assignee under the contract with the acceptance of Law, Law and Perrin were at perfect liberty to make such modifications and changes in their contract as they saw fit. The modification evidenced by the letter of February 23d, however respondent may argue against the unreasonableness of it, was precisely such a modification as was contemplated in the original "square foot" contract where it is said: "It is understood that this per square foot agreement will be sub-

stituted for a lump sum contract, this contract to be drawn and entered into as soon as sufficient drawings have been completed to enable us to do so.'' Perrin himself testified: ''He sent me a paper (meaning the letter of February 23d which Perrin signed) and asked me to do as I had agreed to and sign that paper and I did so. Q. You had agreed to sign such a paper a year before? A. Yes, sir. Q. And had put it off from month to month until February 23, 1906, when you signed the paper? A. Yes, sir. Q. Whereby the amount of money that you were to receive was to depend upon the actual measurement of marble in the building set up? A. Yes, sir.''

We do not perceive in Perrin's testimony anything at variance with the modification of the contract and the explanation of it just quoted. Nor, if there were, in the absence of fraud, coercion or mutual mistake, nothing of which is here asserted, could a witness be permitted, by a mere declaration of his concept of a written contract, to overthrow its plain, unmistakable, and unambiguous language.

It necessarily follows herefrom that under his contract with Perrin, Law was responsible only for the contract price of the marble set and measured in the building and it was the duty of the trial court so to have instructed the jury as matter of law. It was error for the court to leave to the jury, under the circumstances here shown, the determination of the question whether or not plaintiff could recover under the original square foot contract unmodified by the letter of February 23d.

Under the conclusion thus reached no other propositions advanced by appellant require consideration.

For the foregoing reasons the judgment and order are reversed and the cause remanded.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.