[No. 31046. Department Two. March 28, 1950.]

FRED M. BOND *et al., Appellants,* v. JOHN L. WIEGARDT *et al., Respondents.*[1]

[1] Reported in 216 P. (2d) 196.

*John T. Welsh, Charles B. Welsh,* and *Don G. Abel,* for appellants.

*Brodie & Brodie,* for respondents.

Robinson, J.—John L. Wiegardt and Fred W. Wiegardt, discovering that, through inadvertence, they had planted oysters on a state oyster reserve, desired to claim these oysters as their personal property. To assist them in prosecuting their claim, they retained, as attorneys, Fred M. Bond and the late W. H. Abel. Discussions were had concerning the amount of attorneys' fees, and, on or about August 20, 1945, Mr. Bond prepared a draft of a proposed contract of employment and sent four copies thereof to the Wiegardts. Upon receipt of the papers, the Wiegardts, without affixing their signatures to any of the copies, returned them to Mr. Bond, with a letter stating that the description of the oyster land, contained in the proposed agreement, did not include all of the area involved, and that, upon receipt of the revised agreement, it would be properly executed by them. Mr. Bond inserted the omitted description, by interlineation, with a typewriter, and returned the papers, none of which had yet been signed by any of the parties, to the Wiegardts. As revised, the agreement read, in part, as follows:

"Witnesseth: That said first parties do hereby retain the said parties of the second part as their Attorneys to present to the State of Washington and to carry the same through any court or courts that are necessary for the purpose of obtaining the first parties' rights as to oysters in front of lots 1, 2 and 3 of Section 36 township 12 North Range 11 West of W. M., also oysters west of oyster bed D-72, D-89 and D-86 & North of D-42, and also to obtain a lease on the

same from the State if the same can be done and that the said first parties are to pay for said services the sum of $2,000, said amount to be paid upon the completion of said services."

The Wiegardts thereupon signed three of the copies and returned them to Mr. Bond. They assert that, when they returned them, they included, within the same envelope, the following letter, dated September 7, 1945, receipt of which Mr. Bond vigorously denies:

"Mr. Fred M. Bond
South Bend, Wash.
"Dear Mr. Bond:—

"We are returning herewith the three copies of Contract and Agreement concerning certain State Oyster Reserve areas that you and Mr. Abel are to make an effort to establish our claim for the oysters on these areas as well as to secure a lease on the ground that will be suitable to us.

"Fred and I talked this contract over yesterday and we concluded that the second paragraph of the lease which closes stating: *'that said first parties are to pay for said services the sum of $2,000, said amount to be paid upon the completion of said services,'* is possibly clear to you as to its full meaning and intent as to completion of services. We understood Mr. Abel to say that he would ask a $2,000 fee contingent on the completion of his services that would bring a favorable ending for us. And not just for completion of his services which may be taken two different ways according to the wording of the Agreement. We believe that you have in mind what we have just outlined and have signed the three copies and returning herewith. If this is not your ideas, then please advise. The time for filing bids on State Oysters is getting short.

"With kind regards, we are
"FRED W. & J. L. WIEGARDT
By ................................................"

Mr. Bond and Mr. Abel signed all of the copies and returned two of them to the Wiegardts. Apparently, it was the hope of the parties that the matter could be settled without court action, but this hope failed to materialize, and Mr. Bond and Mr. Abel, as attorneys for the Wiegardts, subsequently brought an action against the state of Washington in the superior court for Thurston county. The action was dismissed, and the case was appealed to this court, wherein

the order of dismissal was affirmed. *Wiegardt v. State,* 27 Wn. (2d) 1, 175 P. (2d) 969.

On June 29, 1946, while the case was still pending in this court, Mr. Bond wrote a letter to John Wiegardt, in which he expressed the hope that a favorable decision would ultimately be rendered, and stated:

"In our suit to the State I am entitled to the $1,000 in any event and I trust you will be in a position to send to the Ilwaco bank $1,000 to my credit in my checking account,"

to which the Wiegardts replied:

"Since receiving your letter we have been refreshing our minds as to yours and Mr. Abel's proposition in handling our suit with the State over certain oysters on State Oyster Reserves. In August 1945 we (Fred and John) met with you and Mr. Abel in Mr. Abel's office and he made the following proposition; that he would handle the suit for a flat sum of $2000.00 payable only if he succeeded in obtaining the oysters for us and a lease on certain lands in the State Reserve. . . . , the expected did not happen and the case went to Court and from thereon to the Supreme Court and we are still awaiting a favorable decision from that Court.

"When we mailed in the Contract and Agreement drawn by you, we called your attention to Mr. Abel's statement that he would ask $2000.00 fee contingent on the completion of the case that would bring a favorable ending to us. To brief our standpoint, we are enclosing a copy of our letter that accompanied the return of the Contract. We requested that you advise us if we were not right in our position that $2000 was payable after a favorable decision was rendered. We have heard nothing to the contrary until your letter of June 29th, 1946. . . . We dislike to disappoint you, but according to the Contract, we have not obtained the oysters and lease as yet and to deposit $1000.00 to your credit in the Ilwaco bank would admit of a different arrangement than Mr. Abel offered, and we would, in turn, be liable to him in the sum of $1000.00, too.

"Just as soon as we have clean title to the oysters and lease, we will gladly pay you and Mr. Abel as arranged."

A similar letter was written to Mr. Abel.

Although a copy of the letter of September 7, 1945, which the Wiegardts alleged they had previously sent to Mr. Bond,

was enclosed in the above-quoted letter, Mr. Bond made no mention of it in his reply. (In fairness to him, however, it may be noted that he testified that, at the time he received this letter, he was in the hospital, that his secretary read it to him, that he did not see it himself, and that he was unaware that a copy of the former letter, the letter of September 7th, had been sent with it until some two months after he had returned from the hospital.) In any event, his response read, in part, as follows:

"When we met at Abel's office you were told very straight forward by Mr. Abel that the case would be taken either way one-third of the amount involved on a contingent fee or the flat sum of $2,000.00 to be paid in any event. . . . Now your contract without any doubt provides for the $2,000 win or lose, $1,000 apiece and there is no quibbling about it."

John Wiegardt's reply was as follows:

"You were plainly asked in my letter of September 7, 1945, to please advise us if you had a different idea than $2000 contingent on a favorable decision. I believe that there is an old saying that 'Silence gives consent' and certainly you did not disagree with me at the time of my letter or you would have made reply to the contrary. So please do not blame me for the present misunderstanding as I asked and you did not reply and take exception."

After the adverse decision of this court in *Wiegardt v. State, supra,* had been rendered, Mr. Bond and Mr. Abel brought the present action on the alleged contract for attorneys' fees. At the trial, which was to the court, defendants Wiegardt sought to introduce the letter of September 7, 1945, which they asserted had been sent to Mr. Bond with the signed agreement. Over plaintiffs' objection that this letter was inadmissible as tending to vary the terms of a written contract, it was admitted.

After the taking of the testimony had been completed, and before judgment was entered, plaintiff W. H. Abel died, and, by order of the court, his widow and executrix, Ella R. Abel, was substituted for him. The court made findings of fact, to the effect that the letter of September 7, 1945,

stating that the employment agreement was "contingent on the completion of . . . services that would bring a favorable ending for us," and further stating that, "if this is not your ideas, then please advise," was mailed to Mr. Bond and received by him; and that the failure of the plaintiffs to reply to this letter led the defendants to believe, in good faith, that their offer to employ the plaintiffs on a contingent fee basis had been accepted. The court concluded, as a matter of law, that the plaintiffs were estopped from asserting that the contract was other than for a contingent fee, and entered judgment dismissing the action with costs. Plaintiffs have appealed.

We are here concerned with the mysterious parol evidence rule, the recondite character of which has traditionally provided a sore trial for even such eminent authorities as Thayer, who wrote of it that, "Few things are darker than this, or fuller of subtle difficulties" (Thayer, A Preliminary Treatise on Evidence at the Common Law, chapter 10, p. 390), and Wigmore, who described it as "the most discouraging subject in the whole field of Evidence" (9 Wigmore on Evidence (3d ed.) 3, § 2400). Appellants note that the draft of the proposed agreement, signed by both of the parties, specifically provides that "the said first parties are to pay for said services the sum of $2,000." They urge that, by virtue of the parol evidence rule, the court was not at liberty to consider extrinsic evidence, in the form of the Wiegardt's alleged letter, which would tend to modify that unambiguous language by showing that the parties actually agreed that payment should be on a contingent fee basis.

■ Under the parol evidence rule, which, of course, is well established in this jurisdiction, it is said that parol or other extrinsic evidence is not admissible to add to, subtract from, vary, or contradict written instruments which are contractual in nature, and which are valid, complete, unambiguous, and not affected by accident, fraud, or mistake. *Buyken v. Ertner*, 33 Wn. (2d) 334, 205 P. (2d) 628. See, also, *Minnesota Sandstone Co. v. Clark*, 35 Wash. 466, 77 Pac. 803, and *Searl v. Shell Oil Co.*, 172 Wash. 621, 21 P. (2d) 249.

■ The rule applies to exclude not merely oral utterances, but also informal writings ( letters, memoranda, and so forth) other than the single and final written memorial. *Farley v. Letterman,* 87 Wash. 641, 152 Pac. 515; *Dennison v. Harden,* 29 Wn. (2d) 243, 186 P. (2d) 908. As Wigmore observes, the use of the term "parol" in connection with the rule is misleading, and must be understood to be employed in a purely unnatural and conventional sense. 9 Wigmore on Evidence (3d ed.) 4, § 2400.

■ However, the rule is founded upon the theory that all conversations and agreements made prior to a *final* integration are to be considered as merged therein. *Staver & Walker v. Rogers,* 3 Wash. 603, 28 Pac. 906; *Buyken v. Ertner, supra.* It presupposes an action based on a valid contract; and if the issue is as to the existence or validity of the alleged contract, the rule, by its very terms, has no application, and extrinsic evidence is admitted to determine that issue, whether such evidence tends to establish the validity or invalidity of the contract in question. 4 Page on the Law of Contracts (2d ed.) 3814, § 2171. Thus, extrinsic evidence may be admitted to show that a writing in the form of a contract never became operative as a contract. *Reiner v. Crawford,* 23 Wash. 669, 63 Pac. 516, 83 Am. St. 848; see note to same effect at 83 Am. St. 850. In *In re H. Hicks & Son,* 82 F. (2d) 277, Learned Hand, J., has this to say:

"Nevertheless, it appears to us that the lease and the loan did not create any obligation at the outset; that they were mere forms, intended never to become binding on the companies, and for that reason never contracts. It is well settled that whatever the formal documentary evidence, the parties to a legal transaction may always show that they understood a purported contract not to bind them; it may, for example, be a joke, or a disguise to deceive others. [Citing authorities.] It is no objection that such an understanding contradicts the writing; *a writing is conclusive only so far as the parties intend it to be the authoritative memorial of the transaction.* Whatever the presumptions, their actual understanding may always be shown except in so far as expressly or implicitly they have agreed that the writing alone shall control." (Italics ours.)

■ Following the same reasoning, Professor Corbin, in an illuminating article, states that signing a formal agreement and sending it along with a modifying letter to the other party does not so far integrate the contract as to prevent proof of the modifying letter. Arthur L. Corbin, The Parol Evidence Rule, 53 Yale L. Jour. 603, 615. Assuming acceptance, the final contract arrived at by the parties is not embodied in the formal agreement alone, but consists of that agreement as modified by the letter; for, when writings relating to the same subject matter are contemporaneous, both form part of the integration. Restatement, Contracts, 332, § 237, comment a; see *Sanborn v. United States,* 46 Court of Claims 254.

■ In the present instance, the mailing of the unsigned draft to the Wiegardts constituted an offer to them. The Wiegardts' signing the draft and sending it back to Mr. Bond, with a modifying letter, amounted to a rejection of Mr. Bond's offer and the making of an entirely new offer (*Duplex Envelope Co. v. Baltimore Post Co.,* 163 Md. 596, 163 Atl. 688), since qualified or conditional acceptances are counter-offers and reject the original offer. 1 Williston on Contracts (Rev. ed.) 222, § 77; *Bridge v. Calhoun, Denny & Ewing,* 57 Wash. 272, 106 Pac. 762.

[6] It follows that, in order to establish that Mr. Bond's proposed contract did not in itself constitute the final agreement between the parties, it was entirely proper, and no violation of the parol evidence rule, for respondents to introduce in evidence the Wiegardts' modifying letter.

■ In this connection, appellants have referred to us a number of Washington cases which are authority for the proposition, not involved here, that, in the absence of fraud or mistake, the principal maker of a promissory note cannot set up an independent collateral agreement limiting his liability thereunder. *Anderson v. Mitchell,* 51 Wash. 265, 98 Pac. 751; *Moore v. Kildall,* 111 Wash. 504, 191 Pac. 394; *MacCallum-Donahoe Finance Co. v. Devoe,* 121 Wash. 295, 209 Pac. 514. It appears to be their theory that, by analogy, we are precluded from considering anything except the

written draft of the contract originally submitted to the Wiegardts by Mr. Bond, no matter that this may not have been in itself the final contract agreed upon.

An analysis of the above-cited decisions reveals that, in arriving at the results reached therein, the court was much influenced by the formal character of negotiable instruments, which must be drawn so as to comply with the requisites of negotiability, and by the felt undesirability of encumbering such instruments with extrinsic agreements. This is particularly apparent in the case of *Van Tassel v. McGrail*, 93 Wash. 380, 160 Pac. 1053. We see no reason for extending the principle announced in these cases to ordinary contracts in which no particular formality is required and the terms of which will usually be of concern only to the parties themselves.

The approach employed in *Tacoma Mill Co. v. Sherwood*, 11 Wash. 492, 39 Pac. 977, the earliest of the cases cited by appellants, the progenitor of the others, and the one which in its facts most closely resembles the present case, seems the correct one to be followed in situations such as the one before us. There, the defendant transmitted certain notes to the plaintiff, which he had ostensibly signed as maker. However, he enclosed, with the notes, a letter stating that he had "endorsed them," and claimed that, in consequence, he could only be held as endorser. Apparently, the court did not exclude this letter, in spite of some suggestion in the headnotes to the contrary, but considered it in detail, and came to the conclusion that, read together with the accompanying notes, it was ambiguous and insufficient to overcome the effect of the defendant's signing the notes as maker. Said the court:

"It is true the letter transmitting the notes said that he had endorsed them, but it appeared just as plainly by the notes that he had signed them as a maker. He placed his name upon the face of the notes intentionally, and delivered them as a present contract, and the plaintiff was justified in receiving the notes and in holding Ault as a maker, under the circumstances. In fact it would appear as though the word 'indorsed' had been used in the letter inadvertently,

or in the sense of having signed them rather than in its strict technical sense."

An examination of the modifying letter involved in the present inquiry at once discloses that it contains no similar ambiguity. There can be no doubt that this letter incorporated a serious and material change into the terms of the written draft which Mr. Bond had previously sent to the Wiegardts. Consequently, it seems apparent that the instrument, introduced by appellants as the contract between the parties, was not in fact such, as the Wiegardts never assented to it as a complete and accurate integration of the agreement. It is true that they signed it, and this was not, perhaps, an excessively intelligent action, although it appears more understandable when it is recalled that they had already returned the contract once, and were anxious, as appears from their letter, to proceed with their claim; but the condition under which they signed it would have been abundantly clear to any reader of their modifying letter. It has been said that, when the law enforces contracts, it does so to prevent disappointment of well-founded expectations. Holland on Jurisprudence (9th ed.) 246. In view of the Wiegardts' letter, assuming that he received it, Mr. Bond had no right to anticipate that the contract would be carried out in accordance with the terms which he had originally proposed.

Neither appellants nor respondents have cited us to any decisions from our own jurisdiction, or elsewhere, involving a state of facts resembling that presented by the case at bar. But we may call attention to the very similar case of *White Sewing Machine Co. v. Atkinson & Son,* 126 Ark. 204, 190 S. W. 111. That was an action upon a written contract made by the acceptance of an order. It was held that extrinsic evidence was admissible to show that the purchasers had attached to the written order (which they signed) an additional written stipulation reserving certain rights of revocation in themselves, and such evidence was admitted, even though (as was not the case here) the written order provided that no agreement, except such as was

contained therein, should be a part of the contract. As so modified, the contract was held binding on the seller. Note, also, the ratiocination of *Duplex Envelope Co. v. Baltimore Post Co.*, 163 Md. 596, 163 Atl. 688, where the same result was reached on facts even more analogous to those in the instant case; for there, as is asserted here, the modification in the original contract was included in a letter, returned with the signed draft to the sender thereof.

But appellants contend that the evidence does not demonstrate either that the alleged modifying letter was actually mailed with the contract or that Mr. Bond ever received it. Mr. Bond categorically denied such receipt. His secretary indicated that she did not remember whether the letter had been included or not. There was no indication on Mr. Abel's copy of the contract, which was introduced in evidence, that any such letter had been stapled or otherwise attached to it. On the other hand, John Wiegardt testified that he had prepared the letter himself, and was "satisfied" that it had been mailed; and, though he stated that he did not remember who had actually deposited it, Fred Wiegardt testified that he, Fred, had done so. Fred Wiegardt further testified that he had seen the original of the letter in Mr. Bond's possession at the subsequent court hearing in the Thurston county superior court. Finally, respondents point out that, in their reply to Mr. Bond's letter of June 29th, they called his attention to the fact that they had sent the letter with the contract, and included a copy thereof; and they note that Mr. Bond, in his answer to this letter, nowhere denied that the letter had been so sent him, although he did deny that the contract, as finally made between the parties, had ever included a contingent fee arrangement.

Without further discussing the evidence on this point, it is apparent that the case is not brought within the rule of *Ault v. Interstate Sav. & Loan Ass'n*, 15 Wash. 627, 47 Pac. 13, where it was held that the presumption flowing from the fact that letters usually reach their destination can have little weight against positive testimony to the effect that

an alleged letter was never received. Here, the respondents are relying, not only on that presumption, but on additional evidence which tends to support it. We think it clear that the evidence as a whole permitted the trial judge to find either that the letter had been sent and that Mr. Bond had received it, or that it had not been sent and that he had not received it. He found that the letter had been sent and received, as claimed by respondents.

 It being a settled rule that, in trials to the court, findings upon conflicting evidence will not be disturbed on appeal unless the evidence preponderates against such findings (*Tutewiler v. Shannon,* 8 Wn. (2d) 23, 111 P. (2d) 215; *Lee v. Debentures Inc.,* 8 Wn. (2d) 353, 112 P. (2d) 142; *Stewart v. Stewart,* 27 Wn. (2d) 236, 177 P. (2d) 900), we must endorse the trial court's conclusion in this respect.

 When the offer of the Wiegardts was made, the matter was in treaty, and, for a contract to result, an acceptance of the offer was, of course, requisite. Here, Mr. Bond did not formally accept, but he received and kept the paper writing, which had been signed by both of the parties, as well as the letter of September 7th, which contained the modification in the terms of the paper writing, and the request to him to notify the Wiegardts if he did not agree to this modification; and he continued with performance, as agreed upon by the parties.

Upon receipt of the agreement and the letter of modification thereof, Mr. Bond was at liberty either to reject the offer as made or to accept it upon its terms. If the modification was not satisfactory to him, and if he was not willing to proceed with performance of the contract as so modified, he should have replied to the letter. His not doing so led the Wiegardts to suppose that he was agreeable to carrying out the contract according to their specifications, and his performance of the contract confirmed them in this belief. Had they understood that he had no intention of accepting the contract on a contingent fee basis, they could have, and the evidence suggests that they would have, taken other steps in prosecuting their claim. It is clear, therefore, that

they relied on Mr. Bond's silence to their detriment, and the trial court was correct in holding him estopped to deny his acceptance of the contract as modified. See *Buck v. Equitable Life Assurance Society,* 96 Wash. 683, 165 Pac. 878; *Snead & Co. Iron Works v. Merchants' Loan & Trust Co.,* 225 Ill. 442, 80 N. E. 237, 9 L. R. A. (N.S.) 1007.

█ Mr. Abel, of course, was in no different position. Although the evidence does not indicate that he was notified of the letter modifying the proposed contract, he and Mr. Bond were associated as attorneys in the matter at hand, and Mr. Bond was authorized to draw the agreement and to handle the correspondence with the Wiegardts concerning it. In doing so, Mr. Bond was acting as principal for himself and as agent for Mr. Abel, and his knowledge of the modification must be imputed to the latter, for the general rule is that the law charges the principal with notice of any fact, relating to the subject matter of the agency, which the agent acquires or obtains while acting as such agent and within the scope of his authority. Mechem, Outlines of Agency (3d ed.) 317, § 486.

Appellants objected to the introduction of testimony to the effect that John Wiegardt, at the time he returned the proposed contract, together with the modifying letter of September 7th, would not have been willing to have entered into a fixed-fee contract with respondents.

█ Of course, his willingness or unwillingness to enter into such a contract would ordinarily be quite immaterial if, in fact, he had done so, there being no question of fraud, mutual mistake, or coercion. *Fleming v. Law,* 163 Cal. 227, 124 Pac. 1018. The unexpressed understanding of one of the parties to a contract as to its meaning is usually of no legal significance (Restatement, Contracts, p. 74, § 71), and testimony tending to show secret, undisclosed intention will ordinarily be excluded, as it cannot be used to overthrow the effect of the intention actually made manifest in the contract. *Fox v. Hartford & West Hartford Horse R. Co.,* 70 Conn. 1, 38 Atl. 871.

In the present case, however, John Wiegardt's testimony merely corroborated what he had said in his modifying letter, his unwillingness to enter into a fixed-fee contract having been plainly indicated therein. Doubtless, it was error to have admitted this testimony, but it is difficult to see how, under the circumstances, it could have been in any way harmful to appellants. Error in the admission of evidence is without prejudice when the same facts are established by other evidence. *Chapin v. American Can Co.*, 128 Wash. 316, 222 Pac. 882.

Certain additional assignments of error have been listed by appellants, but they have presented no argument in support thereof, and we are unable to perceive the errors claimed. It appears to us that the contract, actually made between the parties, was one for the legal services of the appellants, with payment to them to be contingent upon their obtaining a result favorable to respondents. Having been unsuccessful in this endeavor, appellants are not entitled to compensation therefor.

The judgment is affirmed.

MALLERY, HILL, and HAMLEY, JJ., concur.

SIMPSON, C. J., concurs in the result.