[Civ. No. 1346.  Third Appellate District.—July 20, 1915.]

## T. J. FLEMING, Trustee, Respondent, v. HERBERT E. LAW, Appellant.

CONTRACTS—SALE OF MARBLE—FORMER DECISION—LAW OF CASE.—In this action to recover on a contract for furnishing marble for the repair of a building, it is held that the decision on the former appeal (163 Cal. 227) that the contract price was to be determined by the amount of the marble set and measured in the building, and not by the amount actually furnished by the contractor, is the law of the case.

ID.—FINDING—CONFLICTING EVIDENCE—RULE.—It is also held that the finding on the vital point in the case,—namely, as to the amount and value of marble saved from the San Francisco fire and earthquake and used in the building, in favor of the respondent's theory, cannot be disturbed on appeal, under the well-recognized rule as to conflicting evidence, notwithstanding the feeble and unsatisfactory character of the evidence in support of such theory.

ID.—SURPLUS MARBLE—WHEN PURCHASER NOT LIABLE FOR.—In such a case, the agreement of the owner of the building being only to pay for whatever amount of marble was incorporated in the building, he could not be held for surplus marble shipped, and such

surplus was shipped at the risk of the contractor, there being no evidence that the former appropriated more marble than was actually used in the building.

ID.—PASSING OF TITLE—MISLEADING INSTRUCTION.—An instruction that the title to the marble shipped under the contract in evidence and under the plans and specifications connected therewith, passed to the defendant when the marble was placed aboard the cars, f. o. b., at Colton, and that the marble so shipped thereupon became the property of the defendant subject to the right to return to plaintiff any surplus, is misleading, as the jury might thereby believe that the amount of marble shipped and not the amount set in the building was the test of the defendant's liability.

ID.—ERRONEOUS INSTRUCTION—ACCEPTANCE OF MARBLE.—The jury should not have been instructed, "You are instructed that if you find from the evidence that there was any surplus marble shipped to defendant by the plaintiff, or by plaintiff's assignor, and received and accepted by the defendant, that it was the duty of defendant to account for such surplus marble to plaintiff, or plaintiff's assignor," as the jury might have concluded that the defendant was liable for all the acceptable marble received at the building.

ID.—TITLE PASSING ON SHIPMENT.—It was error to instruct the jury, "According to the view which I take of the law and as I have stated in one of the instructions, any marble shipped from Colton, which accorded with the terms and conditions of the contract of the parties, as to size, dimensions, and the like, and which was to be shipped in good condition free on board the cars at Colton, thereupon and thereby became the property of the defendant, Law," as the jury would almost necessarily conclude that the amount of such marble shipped was the test of the defendant's liability under the contract, instead of the amount set in the building.

ID.—DETERMINATION OF DEFENDANT'S LIABILITY—IMPROPER REFUSAL OF REQUESTED INSTRUCTION.—A requested instruction should have been given to the effect, that if the jury should find that the plaintiff agreed with defendant that the total extent of the latter's liability should be ascertained by determining the amount of marble set in the building and multiplying the same by the unit price for such marble as set forth in plaintiff's offer, defendant would not be required to pay plaintiff for any excess marble that might have been shipped in defendant's name from Colton to San Francisco, unless the jury should find that defendant refused to turn over to plaintiff such excess marble, if any there was.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   John Hunt, Judge.

The facts are stated in the opinion of the court.

Edgar C. Chapman, for Appellant.

Milton T. U'Ren, and F. J. Goble, for Respondent.

BURNETT, J.—The action was brought to recover the sum of $6,170.61 claimed as a balance due on a contract for marble shipped from Colton, California, to be used in the Monadnock Building in San Francisco, and the verdict and judgment were for plaintiff in the sum of five thousand and seventy dollars, and interest. The parties to said contract were W. A. Perrin, a manufacturer of marble, and Herbert E. Law, the owner of said building, and the plaintiff is the assignee of said Perrin.

We may state appellant's first contention in his own language: "Law concedes that Perrin's figures are correct as to the amount of marble placed on the cars at Colton and shipped to San Francisco, as he has no means of disputing plaintiff's evidence in this behalf or questioning the accuracy of the various statements sent to him from time to time relating to shipments. Law also concedes and admits that plaintiff's statement as to the amount of money paid by him is correct. Law contends, however, that he is not responsible for the total amount of marble shipped, but that the limit of his liability is made to depend upon the quantity of marble actually set in place in his building at the unit prices fixed in the contract." It is insisted that there is no substantial conflict in the evidence but that it shows that "the contract value of the marble set in the building was $33,908.45; also that $31,315.40 was paid on the contract value of the marble set in the building since the fire. The uncontradicted and undisputed evidence was that $7,404.35 worth of marble was saved from the disaster, upon which a balance of $2,738.78 was owing and upon which there had necessarily been paid $4,665.57. This would show that the sum of $35,980.97 was the full amount paid upon all the marble set in the building, or $2,070.52 in excess of the contract price." Indeed, it is admitted that the vital point in the controversy is involved in the amount of marble saved from the fire that is now in the building. Respondent denies that marble of the value of $7,404.35 was saved but claims that it was only of the value of $1,124.35, admitting, how-

ever, that "the whole question, therefore, as to defendant's liability is the value of the marble saved from the earthquake and fire." The case was before the supreme court on a former appeal by defendant. On the former trial it was the theory of plaintiff, adopted by the trial court, that "Law was responsible for all the marble that had been shipped, and that as soon as the marble was placed upon the cars, f. o. b. at Colton, it became his property and that Perrin ceased to have any interest in it." But the supreme court (*Fleming v. Law*, 163 Cal. 227, [124 Pac. 1018]) held that under the pleadings and the evidence, Law could be held only for the amount of marble actually set in the building. The complaint, it may be said, was framed upon the theory that Law agreed to pay for all the marble shipped to him from Colton, while the answer avers that the contract was as follows: "It is agreed that payments for marble in Monadnock Building are approximate only and that the actual marble to be paid for by you (Law) will be measured set in building; the owner taking no responsibility as to sizes or condition, etc., delivered." The pleadings were not amended in any respect at the second trial and hence the issues as thus presented were, of course, the same as at the first trial.

In said opinion it was declared by the supreme court: "Appellant, however, contends and it is without dispute that the contract price for all the marble actually set in the building and measured therein upon its completion amounted to the sum of $33,908.45; that it is equally without dispute that $7,404.35 of this amount was marble saved from the disaster; that deducting this latter sum from the former there is left $26,504.10 as the contract price of the marble shipped after the disaster and actually set in the building. . . . Also appellant still further argues and shows that immediately after the disaster there was a balance unpaid upon the marble shipped of $2,738.78; that there was marble saved to the value of $7,404.35. Deducting from this the sum of $2,738.78, which was owing, $4,665.57 had been paid upon the marble saved from the disaster and placed in the building. Upon the shipment of marble made after the disaster there has admittedly been paid $31,315.40, making a total payment for the marble actually set in the building of $35,980.97." Of course, that decision became and is the law of the case (*Brett v. S. H. Frank & Co.*, 162 Cal. 737, [124 Pac. 437]) and it is

the contention of appellant that the cause is presented here just as it was to the supreme court. Respondent, however, says: "Upon the former trial no evidence was introduced concerning the value of the marble saved from the fire and the earthquake, other than a statement prepared by young Perrin showing that some $7,404.35 worth of marble had been saved. It was thought by counsel at that time that the statement was correct and it so appeared in the transcript. No such concession is now made and it is claimed that from the evidence the jury was justified in finding that marble of the value only of $1,124.35 was saved."

There is no doubt that the only direct evidence based upon actual knowledge was in favor of appellant's contention. The record warrants the following statement by appellant: "Shortly after the disaster and when it was the desire of Law to find out how much marble was uninjured and intact, he instructed his superintendent to have the marble throughout the Monadnock Building examined and measured. Two young men were employed to do this work. They were Morris Helger and the younger Perrin. After the marble in the building had been examined and measured by these men a statement thereof was made by each of them. The statements were identical. . . . This statement was prepared at a time when everything was fresh in his mind and was approved by the elder Perrin, the subcontractor for the setting of the marble in place in the building. This statement was presented to the elder Perrin, who indorsed it by attaching his signature thereto. Upon its face it gave evidence of careful preparation. At the time it was made out it was the desire of Law to collect all the insurance money owing to him on account of damaged marble—that is, marble that had been injured by flame and smoke, or which had been loosened from the walls of the building to such an extent that it would have to be reset. There was no motive at that time for making the estimate of damaged marble less than it was. No dispute had arisen between Perrin and Law, nor had there been any difficulty of any kind between plaintiff and defendant. There was no motive for making the amount of marble saved greater than it really was. The motive, if any, must have been the other way. Years after this estimate was made young Perrin is placed upon the witness-stand and says that the measurements that he made in May, 1906, a statement

of which had been introduced in evidence, were correct."
There is no question that, according to said statement, the
value of the marble saved amounted to $7,404.35. There is
no direct contradiction of said testimony of young Perrin.
It is, however, the claim of respondent that Perrin's estimate
is unreliable for certain enumerated reasons, and that he
discredited himself by the declaration that "he could see
through an inch or two of dust and be able to tell whether
the marble was good or bad" and that "this one statement
alone would be sufficient to justify any jury in disregarding
his whole testimony." What the witness actually said as to
that is shown by the following questions and answers: "Q.
About how deep would that dust have to be before you could
not see through it? A. An inch or two." This is apparently
a mere conjecture or opinion of the witness and would hardly
seem to be sufficient totally to discredit him. The other cir-
cumstances alluded to by respondent appear to be satisfac-
torily explained by appellant in consonance with the integrity,
capacity, and accuracy of the witness but, after all, it was
for the jury to determine how much credit should be accorded
his statements. We cannot say that the jury was bound to
accept his testimony at its face value. It is not necessary
to refer to the significant and familiar circumstances that
clothe the jury with such advantage in determining the
weight of the evidence, nor can we say that in the exercise
of their peculiar prerogative the jurors should have been
convinced by the story told by said Perrin. As to the other
witnesses for appellant it is not claimed that they had exact
knowledge of the amount of marble saved from the building.
Their testimony, it is true, as far as it went, corroborated
Perrin, but they could be certain only that a large amount
of marble was saved, but for its extent or value they de-
pended upon the estimate made by Perrin. In fine, as to
the showing made by appellant, while it appears to us very
persuasive and convincing, under the well-recognized rule
that must prevail here, it cannot be said that the judgment
of the jury should have been controlled by it. It is true,
though, that if no substantial evidence in support of re-
spondent's theory was received the judgment would have to
be reversed since the burden of proof was with plaintiff.

As to whether there was any such credible evidence, coun-
sel are in hopeless conflict.

In his brief respondent calls attention to various circumstances tending to support his position, but he relies largely, it seems, upon the testimony of W. A. Perrin, the father of said F. E. Perrin, and upon the record contained in his shipping book. Respondent contends that the shipping book was the most important testimony produced at the trial and that it shows conclusively that the value of the marble saved from the earthquake and fire was of the value of $1,124.35. In said shipping book there is this item: "On hand April 18, 1906, $1,124.35," and Perrin, Senior, testified that it referred to the marble saved. There is much discussion in the briefs as to the reliability of this record and, indeed, counsel have at great length argued the credibility of the various witnesses and the weight of the evidence. We cannot undertake to notice specifically the various suggestions made, but it is deemed sufficient to say that the elder Perrin stated that he entered in said shipping book the amount of marble which was saved and that he received the information from his son. This was somewhat in the nature of hearsay, but no objection was made to it, and while feeling that the evidence in favor of respondent's contention as to the marble saved is somewhat feeble and unsatisfactory, in view of all the circumstances appearing in the record we think it cannot be said that respondent's theory is entirely unsupported.

The other important contentions of appellant relate to the action of the court in giving and refusing certain instructions. It is claimed that the court erred in refusing the following instruction requested by appellant: "If you believe from the evidence in this case that the defendant and one W. A. Perrin entered into a contract, whereby said Perrin was to manufacture polished marble for use in a building belonging to the defendant in this city and that defendant was to pay for such quantity of marble at the prices mentioned in the contract as was set in said building; and if you also find that defendant has fully paid for all the marble set in said building at the contract price set forth in said contract, then I charge you that plaintiff is not entitled to recover and your verdict should be in favor of defendant." It is said by appellant that "the foregoing instruction covers all the law there is in the case as regards the rights of either plaintiff or defendant, for if Law has actually paid for all the marble set in place in the building, plaintiff cannot recover anything

for and on account of a surplus shipment of marble for the reason that the contract does not provide that the defendant is liable for any surplus shipment, nor is there any pleading upon the part of plaintiff stating a cause of action relative to any surplus shipment of marble. If it be a fact that surplus amount of marble was shipped, defendant under his contract is not liable therefor and if plaintiff desires to recover for any surplus marble so shipped he should come into court with an appropriate pleading whereby to allege and prove that Law had taken possession of the surplus marble that had been shipped either by inadvertence, or otherwise, and that he declined to yield up the possession thereof to the plaintiff. But no such pleading is relied upon by plaintiff and, of course, any evidence in relation to a surplus shipment of marble is impertinent, immaterial and irrelevant to establish any issue raised in this case by plaintiff.'' The said comments of appellant were occasioned by the fact that plaintiff contends that although he did not amend his complaint he could recover in this action for marble appropriated by defendant to his own use, though not for the purpose of putting it into the building. This theory was adopted by the court and hence the refusal to give said instruction. Respondent's view is that there is evidence that ''defendant had appropriated the whole amount delivered to his own use'' and ''The authorities are to the effect that if a vendee accepts a larger quantity than that called for by his contract and appropriates it to his own use that he is liable therefor at the contract price. Conceding that defendant contracted only for the amount of marble set in the building, yet he could accept a greater amount and bind himself to plaintiff for it at the contract price.'' (*Inman* v. *White Lumber Co.*, 14 Cal. App. 551, [112 Pac. 560] ; *Bedell* v. *Kowalsky,* 99 Cal. 236, [33 Pac. 904] ; *Levino* v. *Moore,* 97 App. Div. 109, [89 N. Y. Supp. 573].)

In the Inman case, the contract having been for the purchase of a certain number of redwood ties, it was held that ''though defendant could not be compelled to accept any ties in excess of the maximum stated in the written contract, yet when an excess was delivered and accepted by the defendant, the court was justified in holding that all of the extra ties were delivered under the contract at the contract price and that defendant assumed the corresponding obligation to pay

for the same at the price stipulated in the contract, in the absence of any agreement to the contrary.''

We can see no practical objection to such principle and, conceding that evidence was admitted without objection that defendant received and appropriated to another use additional marble to that used in said building, said marble being furnished under the same contract, the jury would be warranted in holding the defendant liable for it at the contract price. However, after plaintiff was compelled, by the decision of the supreme court, to change his theory of the liability of defendant, it would have been better practice for him to amend his complaint so as to include by appropriate averments this additional marble. This would have been more in accordance with the accepted rules of good pleading and practice. From the statement of respondent it is apparent that his complaint was framed upon the theory of an express contract and he sought to recover additionally upon a *quantum valebat* or *conversion*. In the absence of objection, though, as already indicated, it would be without prejudice and not unreasonable to hold that the cause was tried upon the theory that the issue was properly presented and therefore the point as to variance could not thereafter be urged.

We think, however, that plaintiff's contention as to defendant's liability for the surplus marble is untenable. This view of plaintiff, erroneous as we conceive it, was adopted by the trial court and embodied in the instructions to the jury. There was, it is true, a few hundred dollars' worth of marble sold by defendant under agreement with plaintiff, but we understand there is no serious controversy as to that small amount and it may be eliminated from consideration. Law's contract did not make him liable for the surplus. His agreement was to pay for whatever amount of material was incorporated in the building. The surplus marble that was shipped from Colton was at the risk of the plaintiff. Defendant was not responsible for all that was received at the building. If he had appropriated the surplus his liability would have attached, but there is no evidence that he appropriated more than was actually used, except the small amount before stated. As already stated, he could not know how much even to accept for the building until the marble was set in place.

From the instructions given we think the jury must have concluded that defendant was liable for all the marble that was actually shipped from Colton and received at said Monadnock Building. As a matter of fact, the marble was not actually received by defendant at all. Perrin not only furnished the marble but he was the subcontractor for placing it in the building, and as such received it. Under defendant's contract to pay for the marble that was actually placed in the building he could, of course, not be held liable for *surplus* marble that was received at the building by Perrin. Indeed, as we have stated, he was liable for the surplus only if he converted it. But he did not convert it, with the possible exception of the amount sold by him. The building was completed in January, 1909. Then for the first time could the amount of the surplus be determined and Law at that time requested Perrin to remove what was left from the building as it was in his way. It is admitted by respondent that "the question of what marble was excess could not be determined until after the actual setting in the building had been completed. No one could foretell when the marble was placed on the cars at Colton and delivered to Law, what particular pieces would be placed in the building."

The court instructed the jury as follows: "You are instructed as a matter of law that the title to the marble shipped under the contract in evidence and under the plans and specifications connected therewith, passed to the defendant Law when placed aboard the cars, f. o. b. Colton, California, and that the marble so shipped thereupon became the property of said Law, subject to the right of said Law to return to plaintiff, or plaintiff's assignor, any surplus over that he required for the building, according to the plans and specifications, if any such there be." We agree with appellant that this instruction was calculated to mislead the jury and to induce them to hold Law liable for all the marble that was shipped from Colton. As suggested, the parts of a contract must be construed together to arrive at the intention of the parties. So construed, it seems plain that Law did not become the owner of the marble until it was incorporated in the building. If he became the owner when it was placed on the cars at Colton he was liable for it and would have no right to return any portion of it unless there was an agreement to that effect. But there was no agreement about the return

of any portion of the marble shipped. Under the contract made by the parties, as we understand it, Law was at most the custodian or bailee of the surplus marble, holding it subject to the order of the consignor, and he could not be held liable for it unless he appropriated it to his own use or failed to comply with the direction of Perrin as to the disposition of it. The effect upon the minds of the jury of this instruction, in view of the peculiar facts, could hardly be different from a direction that the defendant was bound to pay for all the marble shipped to him from Colton. This was the construction of the contract insisted upon by respondent at the former trial, as we have seen, but which was condemned by the supreme court.

The jury were directed as follows: "You are instructed that if you find from the evidence that there was any surplus marble shipped to defendant by the plaintiff, or by plaintiff's assignor, and received and accepted by defendant, that it was the duty of defendant to account for such surplus marble to plaintiff or plaintiff's assignor."

The term "accepted" was not defined and was likely to be misconstrued by the jury. "Accepted" is often used in the sense of "received." That is one of the definitions of the word. Ordinarily it signifies "to receive with favor or approbation." No doubt, all the marble received in good condition was accepted in that sense, but the additional element of use in the building was necessary to bind appellant under the contract. From the phraseology used in the instruction we think the jury would quite naturally conclude that Law was liable for all the *acceptable* marble received at the building and therefore it should not have been given.

The court also, in its oral instructions, gave the following: "According to the view which I take of the law and as I have stated in one of the instructions, any marble shipped from Colton, which accorded with the terms and conditions of the contract of the parties, as to size, dimensions and the like, and which was to be shipped in good condition free on board the cars at Colton, thereupon and thereby became the property *of the defendant, Law.*"

From this instruction we think the jury would almost necessarily conclude that the amount of such marble shipped from Colton was the test of defendant's liability under the contract instead of the amount set in the building.

In view of the pleadings and the evidence, we think the court should have given the following instruction requested by defendant: ''If you find from the evidence that Perrin agreed with Law that the total extent of Law's liability should be ascertained by determining the amount of marble set in the building and multiplying the same by the unit price for such marble as set forth in Perrin's offer of September 6, 1904, then I charge you that Mr. Law is not required to pay plaintiff for any excess marble that may have been shipped in Law's name from Colton to San Francisco unless you shall find that Law refused to turn over to Perrin such excess marble, if any there be.''

If such instruction had been given it is quite likely that a different verdict would have been rendered.

It is apparent from an examination of the record that much confusion would have been avoided and less likelihood of error fostered if plaintiff had amended his complaint so as to show separately how much he claimed for the marble set in the building under the original contract and how much for the surplus appropriated otherwise by defendant. If the case is to be tried again it is to be hoped that such amendment will be made in order that the issues may be regularly framed.

We think the judgment and order should be reversed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 16, 1915.