[Civ. No. 3077.   Third Appellate District.—April 30, 1926.]

## R. KRASNOW & SONS, INC. (a Corporation), Appellant, v. C. EMERZIAN et al., Respondents.

[1] SALES — QUANTITIES — AMBIGUITY—PAROL TESTIMONY.—Where a written contract for the sale of grapes is ambiguous as to whether the buyer is to purchase all the grapes of certain named varieties grown by the seller or is limited to the tonnages stated in the instrument, parol testimony is admissible to remove or clear up the ambiguity.

[2] ID.—MAXIMUM QUANTITY—REFUSAL OF EXCESS.—A purchaser of a commodity under a contract definitely fixing the exact maximum amount or quantity of such commodity which the purchaser thereby agrees to buy cannot be compelled to accept from the seller any amount or quantity of such commodity in excess of that specified and fixed by the contract.

[3] ID.—ACCEPTANCE OF EXCESS—QUANTITY—LIABILITY FOR CONTRACT PRICE.—Where the purchaser accepts a larger amount or quantity of the commodity than that definitely fixed by and specified in the contract as the maximum amount or quantity thereby agreed to be purchased, in the absence of any specific agreement to the contract or one providing for other prices or arrangements as to the prices to be received by the seller, he is legally bound and may be held liable to the seller for all excess amount or quantity of such commodity so accepted at the prices fixed and stipulated in the original contract.

[4] ID.—EVIDENCE—FINDINGS—IMPLIED CONTRACT.—In this action to recover for materials furnished and for commissions alleged to

---

1.   See 10 Cal. Jur. 946; 10 R. C. L. 1080.
3.   See 22 Cal. Jur. 929.

be due from defendants to plaintiff in connection with the sale of defendants' grapes in excess of the quantities specified in a written agreement of sale between plaintiff and defendants, in which action defendants cross-complained to recover for such excess grapes at the price stipulated in the written agreement, the trial court was warranted in finding that plaintiff and defendants did not enter into any new or different contract for the handling of such excess grapes by plaintiff on a commission basis and that, having in the absence of such an agreement accepted all the grapes delivered without protest or an offer to return the excess quantities, the necessary implication was that plaintiff accepted them on the terms and at the prices specified in the written agreement.

(1) 22 **C. J.**, p. 1175, n. 44.   (2) 35 **Cyc.**, p. 205, n. 46.   (3) 35 **Cyc.**, p. 205, n. 49.   (4) 4 **C. J.**, p. 883, n. 33; 35 **Cyc.**, p. 261, n. 88.

APPEAL from a judgment of the Superior Court of Fresno County.   C. E. Beaumont, Judge.   Affirmed.

The facts are stated in the opinion of the court.

H. A. Savage, Morrison, Dunne & Brobeck, Morrison, Hohfeld, Foerster, Shuman & Clark and H. A. Judy for Appellant.

L. L. Cory and W. H. Stammer for Respondents.

HART, J.—Plaintiff brought this action to recover from defendants the total sum of $20,110.96, alleged to be due and owing to plaintiff for shook and other material furnished defendants and for labor performed in connection therewith by plaintiff and for commissions on the sale of a certain specified quantity of grapes and certain labor performed and materials furnished necessary to the handling of said fruit for the purposes of shipment and sale.

The issues were made by the complaint, the answer thereto, the cross-complaint of defendants, asking for affirmative relief and the answer of plaintiff to the cross-complaint. Findings were in favor of defendants and, accordingly, judgment was rendered and entered that "plaintiff take nothing by its complaint, and that defendants do have and recover judgment against said plaintiff, . . . for the sum of $10,635.22," which sum includes interest on the sum of $10,204.50 (the principal sum found by the court

to be due defendants from plaintiff) at the rate of seven per cent per annum from December 1, 1922, to the date of the entry of the judgment.

The plaintiff appeals from the judgment, on a bill of exceptions.

The plaintiff is and had been for many years prior to the time of the commencement of this action engaged in the business of buying and selling fruit of all kinds and also handling fruit for growers on consignment—that is, receiving fruit from fruit-growers and selling the same for the latter on a commission basis. The defendants were, and had been, for a considerable time prior to the date of the filing of the complaint herein, engaged in the business of growing grapes of many varieties in what is designated as the "Modesto District," near the town of Sexton, Stanislaus County.

The following extract from the opening brief of counsel for the plaintiff embraces in part an accurate general statement of the facts of this controversy:

"During the grape season of 1922 there was in plaintiff's employ one Charles Boysen, who was the local manager of the plaintiff in the Modesto district—the district within which defendants' farm was located. Prior to May 10, 1922, Mr. Boysen had interviewed C. Emerzian with reference to the purchase of the grapes then growing upon the Sexton farm. Mr. Boysen was acting under instructions from R. Krasnow, president of the plaintiff corporation, with reference to price, and his negotiations with C. Emerzian did not come to a successful conclusion for the reason that a mutually satisfactory price could not be agreed upon. At Mr. Boysen's suggestion, Mr. C. Emerzian went with him to the Fresno main office of the plaintiff on May 10, 1922, for the purpose of interviewing Mr. R. Krasnow with reference to the proposed purchase of grapes. Accordingly, an interview was had in plaintiff's Fresno office on May 10, 1922, there being present Mr. R. Krasnow, C. Emerzian, Charles Boysen and James Krasnow, a son of R. Krasnow. At such conference prices were agreed upon, and a written contract of purchase and sale was entered into between plaintiff and defendants. Said contract was partly in writing, and it was in part a printed form that had been

prepared for plaintiff's general uses without reference to any particular transaction."

Such of the provisions of said contract as are necessary to have before us in considering and passing upon the legal propositions  by which it is sought to support the appeal herein read as follows:

"May 10, 1922.

"In consideration of the price herein specified C. & G. Emerzian, the Seller, has sold and R. Krasnow & Sons, Inc., the Buyer, have bought all of the fruit crops hereinafter specified that the Buyer shall find suitable for eastern markets, produced during the year 1922 on the following described premises: 1 mile south of Sexton.

| Quantity Ton | Variety | Price Per Ton |
|---|---|---|
| 225 | Alicantes | 125.00 |
| 250 | Zinfandel | 70.00 |
| 250 | Tokays & Black Prince | 70.00 |

"The Seller agrees to pick and deliver all of the said fruit at his own expense in good condition, entirely free from mildew, honeydew, rain or sand damage, or any damage whatsoever, and at the times · and place or places directed by the Buyer, and not later than No. 15, 1922. . . .

"This contract is understood by the parties hereto to constitute an immediate sale, transferring title to Buyer, but until delivery has been completed, Seller agrees to, and does assume all risk of loss, depreciation or damage, of whatsoever nature, to any undelivered part of said crop.

"Seller declares he is the sole and absolute owner of the crops herein sold and the sale of the real property shall not affect the right of the Buyer herein.

"The buyer agrees to pay for said fruit upon the completion of delivery thereof and presentation of weight tags therefor, and subject to the following written conditions, which is hereby made a part of this contract:

"Advance of 8000.00 on said crop. If cars loaded other points Buyer agrees to pay for hauling.

"Delivery to be made on board cars at Sexton. Cash on delivery 8000.00. Advance apply on last delivery. To start picking Tokay as soon as pass inspection. Buyer agrees to furnish boxes.

"To start picking wine grapes between 5 and 15 of Sept., 1922. Time is the essence of this contract. Executed in triplicate.

"Signed   C. EMERZIAN, A. G. EMERZIAN,
                                                                "Seller.
         "Address 3211 Tulare St., Fresno
                    "R. KRASNOW & SONS, INC.,
                                                                "Buyer.
                    "By BOYSEN.
"No. 766
                         "Original."

The defendants, in the months of September, October, and November, 1922, delivered to the local office of the plaintiff at Sexton, Stanislaus County, and the latter received and accepted a total of 1,020 tons of grapes of the varieties specified in the contract, or approximately 300 tons of such grapes in excess of the tonnages specified in the above contract. The controversy between the parties to this action relates to or involves the excess quantity of grapes of the varieties specified in the written contract delivered to and received and accepted by plaintiff.

The complaint is in two counts. In the first it is alleged that defendants are indebted to the plaintiff in the sum of $5,317.49, for shook and other material furnished · by the plaintiff to the defendants, in the months of September and October, 1922, at the special instance and request of the latter, and for work and labor performed by the plaintiff in the same months for the defendants, said sum, it is further alleged, representing the reasonable value of the materials so furnished and the labor so performed.

The second cause of action (set forth in paragraph 2 of the second count of the complaint) is founded on an alleged oral agreement, in pursuance of the terms of which the defendants delivered to the plaintiff approximately 619,545 pounds of Tokay and Alicante grapes on consignment, to be and which were by plaintiff packed, loaded, and shipped to Eastern markets and sold for and on account of defendants, upon the agreement and understanding that plaintiff should, from the proceeds of the sales so made, deduct and retain for itself, in addition to costs and expenses necessarily incident to the shipping of said grapes to eastern markets and selling the same therein, seven per

cent of the gross amount received for said grapes as a commission for the services of plaintiff so rendered. The total net sum received by plaintiff on account of the sale of said grapes (so the complaint alleges) was $2,474.71, which sum, it is further alleged, the plaintiff applied to the partial payment of an indebtedness of defendants to plaintiff in the sum of $17,268.18, which sum, upon the completion of the arrangements between plaintiff and defendants for the sale of said grapes on consignment or a commission basis, and prior to the shipment and sale of said grapes, was loaned to defendants by plaintiff and repayable on demand. There was left remaining due plaintiff on account of said loan, the complaint further alleges, the sum of $14,793.47, making the total indebtedness of defendants to plaintiff on account of the claims set up in both causes of action, the sum of $20,110.46, for which, as above stated, judgment is prayed.

The defendants filed an answer and a cross-complaint. By the first-named pleading, and answering the first count thereof, it is admitted that plaintiff, at the times mentioned in the complaint, furnished defendants with the materials mentioned in the complaint and performed the labor therein alleged to have been by it performed for defendants, but denies that the reasonable value of said materials and labor was the sum of $5,317.49, as alleged in the complaint, but alleges that the reasonable value of said materials and labor was the sum of $4,534.77, and no sum in excess thereof. The answer denies the averment of the complaint that plaintiff demanded of defendants payment of the sum of $5,317.-49, the amount claimed by plaintiff as the sum due it from defendants for shook and other materials, labor, etc., or any other sum; denies that defendants are indebted to plaintiff in any sum whatsoever, but alleges that, at the time of the commencement of this action, there was, "and now is, due, owing and unpaid to these defendants from the plaintiff," the total net sum of $10,017.90.

The second count or cause of action set up by the complaint is met by the answer as follows:

"These defendants deny that the plaintiff, at the request of the defendants, or either of them, during the fall of 1922, or at any other time, or at all, accepted from the defendants, or either of them, any Tokay or Alicante grapes

on consignment, to be packed, loaded or shipped to any Eastern market, or otherwise, or at all, or sold for or on account of these defendants, or either of them, or that any arrangement was ever entered into between the plaintiff and the defendants, or either of them, to deduct from the proceeds of any grapes whatsoever, handled on consignment, the cost of any shook, materials or labor for packing, or otherwise, or at all, or the cost of loading, freight, refrigeration, or any cost whatsoever, of delivering any grapes to any Eastern or other market, or to any buyer, or buyers, anywhere, or that the plaintiff was to deduct any per cent of any gross or other amount received for any grapes for handling the same, as commission, or otherwise, or at all, for plaintiff's services, or to deduct any sums whatsoever owing by the defendants or either of them to the plaintiff.

"And these defendants further deny that the plaintiff, after any arrangement, or arrangements, for handling any grapes had been made, as alleged in said second cause of action, or otherwise, or at all, at the special, or other, instance or request of the defendants, or either of them, loaned to the defendants, or either of them, repayable at any time, any sum whatsoever, or that the net, or other, amount received from any grapes, in any manner handled under commission by the plaintiff for the defendants, or either of them, after deducting any costs or commissions, was or is the sum of $2474.71, or any sum at all, or that any such sum, or any sum at all, has been applied by the plaintiff on account of any indebtedness whatsoever due, owing or unpaid from these defendants, or either of them, for any goods or grapes handled on commission, or that there is any sum whatsoever due, owing or unpaid to the plaintiff from the defendants, or either of them in any manner whatsoever."

The cross-complaint alleges that defendants delivered to plaintiff a certain quantity of grapes at. the agreed price of $92,536.15, that of said amount the plaintiff paid defendants the sum of $82,518.25, and that "there is now due, owing and unpaid from the plaintiff to these defendants the sum of $10,017.90, with interest," etc. Judgment is asked for the last-named sum.

Answering the cross-complaint, the plaintiff denies that defendants sold and delivered grapes to it at the agreed

price of $92,536.15, but alleges that it agreed to buy of defendants 725 tons of grapes for which it agreed to pay defendants the sum of $63,125.00, "which said grapes plaintiff did receive, accept and pay for in full, in accordance with said contract"; that, other than the grapes so purchased and received, plaintiff did not at any time purchase from defendants any grapes; denies that it is indebted to defendants in the sum of $10,017.90, but alleges that defendants are indebted to it as set forth in its complaint.

The court found, among other things, "that the allegations of paragraph 2 of the second cause of action set forth and described in plaintiff's amended complaint are not true, and that the allegations and denials in defendant's answer to said second cause of action are true." It was further found that the defendants sold to plaintiff at the time mentioned in the pleadings certain grapes at the agreed price of $92,536.15, of which sum the plaintiff paid defendants the sum of $78,000 cash and the sum of $5,407.69, "a credit due the plaintiff from the defendants" on account of the claim set forth in the first count of the amended complaint for shook and other materials, work, and labor, furnished to and performed for defendants by plaintiff. It was also found that another item of $1,076.04 was due defendants from plaintiff on account of the sale of certain "Carrigan" grapes by plaintiff for defendants on consignment, and which item is included in the total sum alleged in the answer to be due from plaintiff to defendants.

The appeal, as may readily be discerned from the issues as made by the several pleadings, presents two major points for decision. The first arises upon the position of defendants at the trial that the written contract of sale and purchase covered and was intended by the parties to cover or include all the grapes of the varieties specified in said instrument produced by the defendants on the premises described therein during the year 1922. The second point arises from the contention of the defendants that, conceding, as plaintiff contends is true, that the specification in the contract of the tonnage of each of the varieties of grapes therein mentioned definitely fixed and was understood and intended by the parties to fix and limit the quantity of each kind of such grapes that the plaintiff obligated itself to purchase, the latter, having accepted several hundred tons of

the grapes of the designated varieties grown on the premises described in the contract in excess of the tonnages specified therein, without any other agreement or contract as to the terms or conditions upon which it was to receive and accept such excess tonnages than the written contract of May 10, 1922, it is nevertheless, bound, under a familiar principle of law, to pay defendants for such excess at the prices specified in said contract.

[1]    The first point was raised in the court below upon objections by plaintiff to parol testimony offered by defendants and allowed by the court, upon the theory that the language of the contract was ambiguous in that respect, to the effect that it was expressly agreed and understood by and between the parties, and that they intended that the written contract should so provide, that the whole of the crops of grapes of the varieties designated in the contract grown by defendants upon the land described therein during the year 1922 should be covered by said contract of sale; or, in other words, that the plaintiff, by said contract, purchased all the grapes of the varieties specified which might be produced by defendants on said premises during said year at the prices stated in the contract.    The objections by plaintiff to the testimony so offered were, manifestly, grounded upon the proposition that, as to the quantities of the grapes of the kinds specified which the plaintiff agreed to purchase, the language of the contract was clear, unambiguous, and definite, in that therein the amount of each variety of grapes so purchased and intended to be purchased was expressly limited to the tonnages specifically set forth in said contract; that, therefore, the effect of the allowance of parol testimony to show that plaintiff agreed to purchase any amount of each of the specified varieties of grapes in excess of the tonnages so specifically stated would be to vary or change the terms of the written contract in a vital particular and thus set at defiance the inhibitions of section 1856 of the Code of Civil Procedure and section 1625 of the Civil Code.

We feel no reluctance in declaring that there is much force, apparently, in the contention of defendants that the written contract, in so far as it attempts to express the intention of the parties as to the quantity or amount of grapes of the varieties therein specified to be covered thereby—

whether it was intended that the quantity sold should be limited to the tonnages definitely stated in the instrument or to embrace all the grapes of the varieties named produced by defendants on the premises described during the year 1922 —is ambiguous, and that it was necessary to remove or clear up the ambiguity by means of parol testimony. (Code Civ. Proc., sec. 1856, subd. 2.) Further consideration of this point, however, may be waived, inasmuch as we have arrived at the conclusion that, upon the evidence and the findings, the point secondly made and urged by defendants is sound and well taken, and that, upon the theory of the case thus afforded, the judgment must be sustained.

[2] Obviously, a purchaser of a commodity under a contract definitely fixing the exact maximum amount or quantity of such commodity which the purchaser thereby agrees to buy cannot be compelled to accept from the seller any amount or quantity of such commodity in excess of that specified and fixed by the contract. Of course, in simple terms this only means that a party to a contract is not legally obligated to do or perform more than his contract requires of him. The proposition is trite. [3] But it is equally true that, where a purchaser under such a contract does accept a larger amount or quantity of the commodity than that definitely fixed by and specified in the contract as the maximum amount or quantity thereby agreed to be purchased, in the absence of a specific agreement to the contrary or one providing for other prices or arrangements as to the prices to be received by the seller, he is legally bound and may be held liable to the seller for all excess amount or quantity of such commodity so accepted at the prices fixed and stipulated in the original contract. The rule is in effect and substance thus formulated by the authorities and the decisions: That the offer or delivery by the seller to the purchaser of a larger quantity of the commodity than that expressly and specifically contracted for must be regarded as a new offer by the seller, and, while the buyer may, of course, reject such offer, if he accepts the excess quantity, then such acceptance is to be regarded as sufficient evidence of his assent to the offer at the price or prices stipulated in the original contract. "Taking the goods when he knew, or ought to have known, that they exceeded in amount what were ordered or contracted for, is sufficient

evidence of assent. The obligation is, therefore, contractual, not *quasi* contractual. If, by the terms of the original contract or order, the price of the goods was based on their number, weight, or measure, the same rate must be paid for the larger quantity." (2 Williston on Sales, p. 1159; see, also, *Bedell* v. *Kowalsky*, 99 Cal. 236, 237 [33 Pac. 904] ; *Inman* v. *L. E. White L. Co.*, 14 Cal. App. 551, 554, 555 [112 Pac. 560] ; *Fleming* v. *Law*, 28 Cal. App. 110, 117 [151 Pac. 385] ; *Linger* v. *Wilson*, 73 W. Va. 669 [80 S. E. 1108] ; *Levino* v. *Moore Co.*, 97 App. Div. 109 [89 N. Y. Supp. 573] ; *Randall* v. *National Co.*, 64 Hun, 636 [19 N. Y. Supp. 633].) The last-named case was concerned with a contract for the delivery of 800 or 900 tons of ice. The party delivered 1,314 tons and the action was for the amount in excess of that named in the contract at the price fixed therein, there being no agreement that the excess amount should be delivered at a price different from that specified in the contract. The court said: "Having received this ice in excess of the amount called for by the contract, the law would hold the defendant liable to pay for the same, and, in the absence of any agreement to the contrary, at the price stipulated in the contract." (This case was appealed to the court of appeals and the decision affirmed—138 N. Y. 644 [34 N. E. 513].)

In *Linger* v. *Wilson, supra,* the defendant ordered a certain quantity of grain by weight. The plaintiffs delivered a larger amount than that ordered or contracted for. After receiving the grain, defendant refused to honor a draft for the grain unless plaintiffs made a new draft allowing a claim which defendant insisted plaintiffs owed him on a previous contract between them. Plaintiffs rejected the claim on the ground that it was not based on any debt or obligation due from him to defendant. About a week after the arrival of the car containing the grain at the delivery point, and a longer time after the receipt by defendant of the invoice showing the quantity shipped, the defendant made the objection that the quantity of grain shipped was in excess of the quantity contracted for. After some controversy between the parties regarding the matter, plaintiffs proposed that defendant should take from the car the quantity actually ordered and that they would dispose of the remainder or excess amount of the grain shipped. De-

fendant refused to do this. Plaintiffs thereafter sold the entire quantity of grain to the best advantage and brought an action against defendant to recover the difference between the amount received for the grain and the amount that it was worth at the contract price with defendant. Judgment passed for plaintiffs. On appeal, the supreme court, after declaring that the objection by defendant to receiving the grain because of failure of plaintiffs to comply with a former contract between them having no relation to the contract in suit "is no ground upon which defendant can excuse himself from complying with this latter distinct contract of purchase," said: "Though a purchaser of goods does not order the quantity delivered to him, a sale of the whole will be implied where on receiving the goods the purchaser does not, within a reasonable time, repel the implication by returning the goods or notifying the seller that he will not accept them because of the excess of quantity. Failure to return or to give notice of non-acceptance, amounts to an acceptance."

The same principle is applied in cases where there is an employment of the personal services of a party for a definite or stated term at an agreed and fixed rate of compensation, and the servant continues to render the same character of service which the contract calls for after the expiration of the term specified therein, and there is no new agreement. *Hermann* v. *Littlefield*, 109 Cal. 430 [42 Pac. 443], was such a case, and therein, at page 432, it is said that "it is elementary that when a person performing labor at an agreed price and for a stated time continues in the same employment after the expiration of the term, without a new agreement, it is presumed by the law, in the absence of anything to the contrary, that the terms of the original contract are continued."

"But," as is said in *Inman* v. *L. E. White L. Co., supra,* referring to the rule above considered, "if this were not so, plaintiffs could at least recover the reasonable value of the ties in question. No inquiry was made as to the reasonable value, but the contract itself is evidence of this and controlling in the absence of all other evidence," citing *Adams* v. *Burbank*, 103 Cal. 646 [37 Pac. 640]; *Hermann* v. *Littlefield,* 109 Cal. 430 [42 Pac. 443]; *Donegan* v. *Houston,* 5 Cal. App. 626 [90 Pac. 1073].

[4] The findings herein bring this case clearly within the principles announced and invoked in the cases above reviewed upon either theory therein suggested, according to the nature of the action or remedy resorted to to recover for the excess quantities of grapes delivered to and accepted by the buyer—that is, whether the action was upon the contract itself or upon a *quantum meruit* for the recovery of the reasonable market value of the excess at the time the sale was made, of which the prices agreed upon and fixed in the contract would stand as sufficient evidence as to reasonable market value in the absence of all other evidence on that question.

As pointed out above, upon the question whether the parties did or did not enter into an agreement whereby the defendants were to and did deliver the excess quantities of Alicante and Tokay grapes to plaintiff on consignment to be shipped and sold by the latter on a commission basis, a direct and clean-cut issue was made and tendered by the pleadings, and, as likewise further pointed out, the court expressly and specifically found, in effect, that the statement in paragraph 2 of the second cause of action set out in the complaint that such an agreement had been made as to said excess quantities was devoid of evidentiary support, and further expressly found that, to the contrary, the denials of the answer of the allegations of the second paragraph of the second cause of action were true. The findings as to the alleged consignment agreement are amply supported by the evidence, or, to state the proposition in a different and equally as accurate a form, the findings necessarily imply that the plaintiff failed to sustain the burden cast upon it, or which it of necessity assumed, of proving by the requisite degree of evidence that as to the varieties of grapes named in the contract any other agreement or understanding than that evidenced by said contract was at any time entered into or had between the parties.

The contract between the parties which was committed to writing and executed on the tenth day of May, 1922, was, as seen, negotiated on behalf of plaintiff by Boysen, the latter's agent in the Modesto district. R. Krasnow, manager of plaintiff's business, testified that, after the making of the written contract of May 10, 1922, he had three different conversations with the defendant C. Emerzian, in

which they discussed various matters relative to the sale of
the grapes of defendants; that, in one of these conversations,
held in the month of August, 1922, said defendant said to
said Krasnow that "he would like to sell the balance of
the stuff. I told him," continued said Krasnow, "condi-
tions in the east looked bad. It looked as if there would
be serious car shortage. I told him I could not use any
grapes because I had all I needed. I said if I had cars I
would take his grapes on consignment and charge him so
much for loading, so much for commission back east." In
the month of September, 1922, said Krasnow further testi-
fied, he stated to said Emerzian that he (Krasnow) would
take the crop of Muscat grapes produced by defendants on
consignment, on the basis of certain specified commissions
and necessary expenses connected with the handling, ship-
ping, and selling of the said crops and that said Emerzian
agreed to that proposition. While this conversation was
going on, the witness said, his bookkeeper was present.
There was in all these conversations, the witness stated,
more or less said about shook and other materials which
plaintiff was to furnish defendants and the prices thereof
and for labor in handling the grapes received from the
former by the latter on consignment.

James Krasnow, son of the Krasnow whose testimony is
referred to above, was, he stated, the "outside utility man"
for plaintiff, and that his "activities extended in a general
way to the receiving of grapes to be handled" by plaintiff.
He testified that, at the time the written contract of May
10, 1922, was signed, he, Mr. Boysen, agent of plaintiff, Mr.
Krasnow, Sr., and defendant C. Emerzian were present;
that there was nothing said on that occasion as to the han-
dling of defendants' grapes on consignment; that he was fre-
quently in Modesto during the months of September and
October, 1922, and that in that period of time talked with
C. Emerzian "with reference to the handling of defend-
ants' grapes on a consignment basis"; that "Mr. Emerzian
said that he would give plaintiff a portion of their grapes
on consignment; that he would give over to us to handle on
consignment such of the grapes as were not covered by the
contract"; that he was at Modesto at the time that grapes
were being received from defendants "and Muscats and
Carrigans were received from them as well as Alicantes,

Zinfandels, Tokays and Black Prince.'' He further stated . that ''Mr. Emerzian spoke also concerning the handling of Carrigans''; that ''he would give us a chance to handle them''; that ''we did handle on consignment approximately ten cars of Carrigans and fourteen cars of Muscats.''

Harold Hain, son-in-law of Krasnow, Sr., and the book-keeper of plaintiff at the Fresno office during the months of August, September, and November, 1922, exhibited a number of sheets containing what purported to be a record of the grape transactions between plaintiff and defendants during the year 1922. This record indicated sales at divers times by plaintiff on commission of certain quantities of grapes of the several varieties named in the contract and also certain quantities of the Carrigan grapes delivered by defendants to the former. The reports of the sales, he stated, were received from the points in the east where the sales were made from forty to sixty days after such sales, and he would then make a record of the reports, showing prices received, expenses and net returns, if any, on sheets of paper. On cross-examination, however, he stated that these records were made a very short time prior to the com-mencement of this action. He further admitted on cross-examination that in another book he preserved a record of the number of tons delivered at points in the Modesto dis-trict, as reported by Boysen, the plaintiff's agent in said district, together with the contract prices per ton. In that book there was no notation indicating that any of the con-tract grapes so delivered, either the quantities coextensive with the limit fixed by the contract or the quantities in excess of those so specifically fixed, were received or ac-cepted by plaintiff on consignment or on any other terms as to prices than those stipulated in the written agreement. The witness admitted that that book—the one just referred to—constituted or embraced the original records of all the grapes of the contract varieties delivered by defendants to plaintiff during the year 1922.

Other than the testimony above synoptically given, there was no proof offered by plaintiff tending to show that any agreement or understanding was had between the parties that the excess quantities of grapes of the contract varieties delivered by defendants to plaintiff were to be handled by the latter on consignment or a commission basis. It is

worthy of special note, in considering said testimony, that, while the Krasnows each expressly testified that an agreement was had between plaintiff and the defendants for the handling by plaintiff on a commission basis of certain grapes produced by defendants in the year 1922 other than those of the varieties named in the contract, neither likewise stated that any such agreement or arrangement was had as to the excess quantities. In other words, neither of the Krasnows directly or specifically stated that the agreement which they testified was made by the plaintiff and the defendants for the handling of grapes grown by the latter on their premises in 1922 on a commission basis were of the contract varieties. James Krasnow's testimony that C. Emerzian, either in September or October, 1922, said to him (said Krasnow) "that he (Emerzian) would give over to us to handle on consignment such of the grapes as were not covered by the contract," involved the nearest approach to the declaration that an agreement was had for the handling by plaintiff on commission of the excess quantities of the contract quality of grapes delivered by defendants to plaintiff during 1922 that was made by any of the witnesses for plaintiff, and yet that testimony is so ambiguous that it is difficult to determine therefrom whether the witness intended to say that Emerzian told him that plaintiff could handle on consignment the grapes of all kinds produced by defendants in 1922, including those of the contract varieties over and above the quantities limited by the contract, or those grapes only which were not of the varieties mentioned in the contract. Thus it is manifest that the trial court, as the trier of the questions of fact, was at liberty, in the exercise of its discretion in the appraisement of the value and weight of the evidence, to interpret said statement in the witness' testimony, and it is to be assumed did so interpret it, to mean that Emerzian's proposition as so stated to said Krasnow was that the defendants would deliver to plaintiff, to be by it disposed of on commission, all grapes produced on their premises in the year 1922 other than those grapes likewise produced of the varieties mentioned in the contract. Indeed, assuming, as it is proper to assume, that the language of Emerzian, in making said proposition to Krasnow, was exactly as it was given by the latter in his testimony, the trial court was justified in con-

cluding, as doubtless it did conclude, that said Emerzian then referred to grapes of varieties other than those named in the contract. The admitted fact that the defendants did make an agreement with plaintiff to deliver other varieties of 1922 grapes to it on consignment supports that conclusion.

The foregoing review of the testimony presented by plaintiff upon the question whether any agreement was entered into or any understanding had between the parties that the excess quantities of the grapes of the varieties named in the contract were to be delivered to and received and disposed of by plaintiff on a commission basis clearly shows, as it was and is intended to show, that, if no other testimony addressed to the establishment of such an agreement had been presented than that thus shown to have been presented by plaintiff, the finding by the trial court that no such agreement or understanding was made or had between the parties, or that the burden resting upon plaintiff to show that the excess quantities were disposed of on a commission basis under a special agreement to that effect was not sustained by it, would stand immune from just disturbance by this court. Assuming, though, that the plaintiff's testimony upon that proposition is such that the trial court could properly have deduced therefrom a finding that such a special agreement was made by the parties, we then arrive at the same result under the familiar rule of substantial evidentiary conflicts upon the issues to be determined.

C. Emerzian testified, as did Boysen, plaintiff's agent, that negotiations for the purchase of the grapes of the defendants produced by them in the year 1922 were conducted by him on behalf of defendants, and by Boysen, on behalf of plaintiff; that these negotiations led to the execution of the written contract of May 10, 1922; that, up to the time said contract was executed, he never at any time talked with either of the Krasnows on the subject of the sale to plaintiff of their 1922 crops of grapes; that neither on the occasion of the execution of the written contract nor on any other or subsequent occasion was anything ever said by him to either of the Krasnows or by either of the latter to him about the acceptance and the handling by the plaintiff of the excess quantities of grapes of the contract varieties over the quantities specifically mentioned in the contract on

consignment or a commission basis; that no such agreement
was at any time ever entered into or understanding had be-
tween or by the plaintiff and defendants or either of the
latter; that it was the understanding between him and Boy-
sen (and this testimony is referred to as in support only
of the position of defendants that no such agreement was
made) that plaintiff was to purchase and did by the con-
tract purchase the entire crops of grapes of those named
in the contract grown by defendants on their land in the
year 1922, and that the statement of the tonnages in the
contract was intended only as estimates of the minimum
amount of the grapes so sold and purchased.

Boysen testified that he had never heard or understood
that the excess quantities were to be handled by plaintiff
on consignment; that he knew of no such agreement or un-
derstanding having been at any time made or had between
the parties; that the excess quantities were, upon being de-
livered by defendants, handled just as the other grapes of
the same varieties were handled—weighed and then loaded
in the cars, and weight tags or receipts prepared and is-
sued, one delivered to the defendants, one retained at the
office of appellant in Modesto, and one sent to appellant's
main office.

R. W. Fithian, bookkeeper at plaintiff's Modesto office,
testified that he prepared on sheets of paper copies of the
original records compiled in the Modesto office of deliveries
by the defendants of the contract varieties of grapes. "The
plaintiff's practice with reference to these records," he tes-
tified, "was to make an original which was transmitted to
the Fresno office, a duplicate of which was transmitted to
the grower, and a triplicate retained in the Modesto office
until the close of the season and then sent to Fresno. . . .
I did all this under instructions from Mr Boysen." He
further testified that Boysen instructed him that the prices
to be noted in the records thus made up were the prices
specified in the contract for the varieties therein named.
The sheets referred to by the witness as being copies of the
original records of the Modesto office of the deliveries made
by defendants were introduced in evidence. In this con-
nection, we may, without departing from an orderly con-
sideration of the testimony as presented by defendants, re-
fer to the testimony of C. Emerzian that, subsequent to

the delivery of the entire crop of the grapes of the kinds named in the contract, and after he had received the statements referred to by the witness Fithian, he (said Emerzian), in comparing the weights with the weight receipts and the computations of prices with the contract, discovered an error in computation to the extent of $1,500 against the defendants; that he thereupon visited the Fresno office and called the attention of the bookkeeper in said office (Hain) to the error; that the latter immediately informed him (said Emerzian) that the error had already been corrected in the copy of the statement on file in the Fresno office; that he (Emerzian) then directed the attention of the bookkeeper at the Modesto office to the error and the former there made the correction. This testimony was not contradicted. It also may here properly be noted that said Emerzian further testified that, after the controversy arose between the parties regarding the excess quantities delivered by defendants to plaintiff, the latter, through its officers, offered to settle their differences if the latter would agree to a discount on the total sum which the excess quantities came to on the basis of the contract prices, to which proposition the defendants refused to agree.

Further consideration of the evidence herein is not required. From the above review thereof it is patent that the court was clearly warranted in finding that no agreement or understanding was had between the parties that the tonnages delivered to and accepted by plaintiff in excess of the named quantities should be received by plaintiff and by it disposed of on commission; that, having in the absence of such an agreement accepted all the grapes delivered without protest or an offer to return the excess quantities, the necessary implication was that the plaintiff accepted them on the terms and at the prices specified in the written contract.

The defendants make no point here that the evidence is insufficient to support the finding in favor of plaintiff on the claim constituting the basis of the first cause of action set forth in the complaint.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.